## HARMAN SCHAFERMAN *vs.* WILLIAM O'BRIEN, and others.

*Plea of Limitations — Lis pendens — Parties — Maintenance and Champerty — Assignee of Choses in action — Fraudulent conveyance.*

Where judgment is confessed by a fraudulent grantor *before* the claim has become barred by limitations, the original cause of action is merged in the judgment, and the plea of limitations cannot avail against it.

Where a grantee of land pending a proceeding against him, to set aside the deed to him as fraudulent, makes a conveyance of the land, the persons to whom he so conveys need not be made parties to the suit.

Grantees claiming the land under parties to the suit, or any of them, by title derived. *pendente lite*, are in no better condition than those under whom they claim.

We are not aware of any case in the judicial history of this State, where the provisions of the statute of 32 Hen VIII. ch. 9, have been enforced. Without meaning to assert that there might not be such exceptionable conduct, savoring of champerty and maintenance, as to be punishable, yet there can be no doubt that this statute is in a great measure now obsolete.

Schaferman *vs.* O'Brien, *et al.*

Before the Act of 1829, ch. 51, the *bona fide* assignee of a chose in action, was considered as having peculiarly an equitable remedy, and certainly that statute enlarges his powers.

The necessity of a lien by a judgment, or otherwise, against the property, as preliminary to equitable relief, is obviated since the Act of 1835, ch. 380.

Where a bill in equity to set aside a deed for land as made in fraud of creditors, was filed by the assignee of a judgment rendered against the grantor, and assigned to the complainant subsequently to the date of the deed, but based on a claim arising antecedent to the date of the deed. HELD:

1st. That the complainant, as assignee, being entitled to collect from the grantor, this demand existing as an original cause of action antecedent to the deed in question, had the right to pursue any property for the payment of the same, belonging to the grantor liable therefor, unless *bona fide* transferred to a purchaser for a valuable consideration.

2d. That the deed, if it were an honest transaction between the parties, would afford protection to the grantee therein, against the claim, which existed antecedent thereto, as the judgment was not rendered until afterwards.

3d. But if the deed were the result of fraudulent collusion between the grantor and grantee, to hinder and defeat the creditors of the grantor, it cannot receive the countenance of a Court of Equity.

4th. However solemn the instrument in its formalities, if it had its origin in fraud, it is a nullity, so far as the creditors of the grantor are concerned.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed by William O'Brien, on the 4th of December, 1857, to set aside a deed from C. Leiman to Harman Schaferman, dated 30th of September, 1852; it alleges that Leiman being indebted to one R. W. Pendleton, on the 18th of September, 1852, was sued by him on the 25th of October, 1852, and judgment recovered on the 9th of June, 1853; this judgment the complainant alleged he bought on the 1st of December, 1857. That Leiman by deed dated the 30th of September, 1852, and duly recorded within six months, conveyed the property therein specified without con-

sideration, and to defraud his creditors, to the defendant Schaferman, who received the title to hold it in secret trust, and that Leiman has ever since acted as owner, receiving the rents, etc., without any return to Schaferman; that on the 22d of May, 1854, Leiman applied for the benefit of the insolvent laws, and Wm. Scip was appointed trustee for creditors, and that such application was designed to further the object to defraud; that he returned no property, and the judgment was wholly unpaid. The bill after seeking a discovery, prayed that the deed might be declared void, and the property therein mentioned be subjected to the payment of Leiman's debts.

The answers of Schaferman and Leiman denied all the allegations as to fraud, and also the existence of any such claim or the confession of any judgment or any indebtedness therefor; they denied all secret trust as alleged, and insisted that whenever Leiman collected the rents of the property he did so as agent, and always accounted for them to Schaferman, and the deed was *bona fide*, and the consideration $1500 was paid. Seip as trustee answered, that as he knew nothing, he could neither affirm nor deny, but submitted the matter to the Court.

The defendant Schaferman filed exceptions to the insufficiency of the bill, and leave being granted, he afterwards filed a separate and amended answer thereto. In this after denying as before, he pleaded limitations to the claim, and insisted that as the complainant bought the claim several years after the alleged fraudulent deed was recorded, that he had no standing in Court to impeach the same, and also that he, Schaferman, having sold the property and conveyed it by deed dated the 29th of March, 1860, and recorded the same day, the grantees were proper to be made parties to the cause. A commission was issued to take testimony, and a great deal of testimony was taken about the value of the property and the declarations of the parties. The Court below (KREBS, J.) passed a decree on the 20th of September, 1862, setting aside the deed; from this decree the present appeal was taken.

The cause was argued before BARTOL, C. J., STEWART, GRASON, and MILLER, J.

*William H. Dawson* and *George H. Williams,* for the appellant, contended:

That the evidence in the cause shews no fraud in fact—that full value was paid for the property and the deed properly lodged by him for record, within the time prescribed by law; the consideration not being contradicted it stands *prima facie* as good. *Moore, et al. vs. Blondheim, et al.,* 19 *Md. Rep.,* 176; *Faringer vs. Ramsay,* 2 *Md. Rep.,* 365.

There must be pointed evidence of fraud in fact. *Cooke's Lessee vs. Kell,* 13 *Md. Rep.,* 469. If the deed were fraudulent as alleged, a cause of action by bill in equity accrued to set it aside, to the then holder of the note, Pendleton, on the 10th of January, 1853, the day the deed was lodged for record, the note of Leiman having matured on the 16th–19th of September, 1852, and being then unpaid, and limitations commenced to run in favor of Schaferman from the said 10th of January, 1853, and the procuring a judgment against Leiman, who had ceased to have any interest in the property, did not stop, as against Schaferman, the running of the statute. The record of the deed was constructive notice to Pendleton; he should have filed his bill at once, and his right to file a bill was on that day complete. *Act* 1835, *ch.* 380, *sec.* 2; *Sanderson vs. Stockdale,* 11 *Md. Rep.,* 573; *Teackle, et al. vs. Gibson,* 8 *Md. Rep.,* 70. In this case limitations has been specially pleaded to the claim on which the suit was brought. *McDowell vs. Goldsmith,* 6 *Md. Rep.,* 319. And when once the statute commences to run nothing stops it. *Young vs. Mackall,* 4 *Md. Rep.,* 374.

The property having been conveyed *pendente lite,* by deed duly acknowledged and recorded on the 29th of March, 1860, the rights of purchasers are to be decided according to the notice as then given by the allegations of the bill, and are not to be affected by the pretended deed of the appellant,

Schaferman *vs.* O'Brien, *et al.*

lodged for record the 9th of June, 1860, and three years and five months after its pretended execution, and which was only lodged for record nine days prior to the copy of it being given in evidence. The record of said deed only gave notice from its day of lodgment with the clerk for record. *Code of Pub. Gen'l Laws, Art.* 24, *sec.* 19.

If the deed be valid for any purpose, and the complainant had it to produce in evidence, as this bill was filed in December, 1857, and the deed bears date on the 6th of January, 1857, then the appellant had no interest in said property, and the proceedings should have been dismissed as against him, and Leiman the grantee having no interest which could override that of Voyce and Weaver, as purchasers without notice, a supplemental bill should have been filed making them parties; and the decree in this cause setting aside the deed to the appellant, who had no interest, if he had conveyed it back again, amounts to nothing.

The present complainant having bought the judgment on which the bill was predicated, on the 2d of December, 1857, and the bill having been filed only two days afterwards, how can he say he was defrauded by a deed lodged for record on the 10th of January, 1853, nearly five years before the purchase of the judgment? *Williams, et al. vs. Banks, et al.,* 11 *Md. Rep.,* 250.

The exceptions of Schaferman, and the amended answer, set up the defence that the claim was bought by the complainant for the express purpose of bringing this suit. The complainant's own proof shows that M'Laughlin's check in purchase of this claim, was given December 2d, 1857. The bill of complaint was filed on the 4th of December, 1857, two days thereafter. It is contended, therefore, that this purchase for such a purpose savors of champerty. The statute of 32, Henry VIII, ch. 9, is in force in this State. *Kilty's Report,* 232. And such statutes are intended to prevent traffic in doubtful claims, and to operate upon buyers of pretended rights, who have no relation to the suit or the subject, other-

wise than as purchasers of the profits of litigation. *Thalhimer vs. Brinkerhoff*, 3 *Cowen*, 648; *Rives vs. Weaver*, 36 *Mississippi*, 374.

The purchase of a mere foundation of an action, by a party who has no interest in the controversy, with the express object of commencing a suit thereon, and for the purpose of harassing a defendant, *or of speculating out of the litigation, is illegal*, and a Court of Equity will not sustain a suit in favor of such purchaser. *Ward vs. Van Bokkelen*, 2 *Paige N. Y. Reps.*, 296, 297; *Prosser vs. Edmonds*, 1 *Younge and Collyer*, 491. It is a principal of law common to all well governed countries, that no encouragement should be given to litigation, by the introduction of parties to enforce those rights which others are not disposed to enforce. 4 *Kent Com.*, 447, *(Margin,) note*, 10*th Ed.*; 2 *Story's Eq., Redfield's Edition, sec.* 1048; *Adam's Equity, (Margin,)* 54.

*P. M'Laughlin*, for the appellees:

On an examination of the leading cases on the subject of fraudulent conveyances, there are few cases to be found where the badges of fraud are so numerous, so strongly marked, or so clearly proven as they are in this case. *Jackson vs. Timmerman*, 12 *Wend.*, 299; *Jackson vs. Mather*, 7 *Cowan*, 301, 302, 303, 305; *Collan vs. Statham*, 23 *Howard*, 477, 479; *McDowell vs. Goldsmith*, 2 *Md. Ch. Dec.*, 370, 386; *Hartshorne vs. Eames*, 31 *Maine*, 93, 98, 99, the Court laying down as the rule in reference to the manner in which frauds may be proved, says: "If anything improper be intended in a negotiation it will seldom, if ever, be avowed, but everything tending to make it apparent will be concealed." 20 *Pick.*, 247, 251; on the same point, see *Ricards vs. Swan*, 7 *Gill*, 367, 368; *McDowell vs. Goldsmith*, 6 *Md. Rep.*, 319, 344, 345; *Feigley vs. Feigley*, 7 *Md. Rep.*, 537, 561; *McDowell vs. Goldsmith*, 2 *Md. Ch. Dec.*, 370, 387.; *Bridges vs. Eccleston*, 14 *Mass.*, 245, 246, 249.

The parties to this cause contest the case up to this time as if Schaferman still owned the property, though Conrad Leiman has in his possession a deed of it from Schaferman, dated the 6th of January, 1857, nearly twelve months before the bill in this case was filed, and both Schaferman and Leiman conceal this fact from Conrad Leiman's creditors, until the 9th of June, 1860. There is nothing in the answer to indicate even the existence of this deed. But it is supposed that this bill cannot be prosecuted after notice of this deed is brought to the Court, but in answering this position it is presumed that the defendants will be equally unsuccessful, as we suppose they have been in their efforts to remove the imputations of fraud resting on the transaction, as about five months before the deed to Leiman was put on record, Schaferman, by his deed dated the 29th March, 1860, assigned the same ground to Wm. H. Weaver and George Voyce, which was recorded on the day of its date. From these two deeds a casual observer might be led to conclude that trouble and distrust had entered the camp of the defendants, and that Schaferman and Leiman were both asserting claim to this particular property. From the respective dates of these deeds and the dates on which they were recorded, it will be seen that Conrad Leiman had not at any time since 1852, a record title to the property, for the deed from Schaferman to Weaver and Voyce, was recorded before that to Leiman, and though not under seal, was intended to be a deed, and was duly acknowledged and recorded, and would be enforced as a contract as against Leiman and all claiming under him by virtue of the deed of January 6th, 1857.

But it is contended that the complainant ought to amend his bill for the purpose of making Weaver and Voyce parties to it. Weaver and Voyce took an assignment of the property in litigation in this case, long after Schaferman, who assigned to them, had been served with the summons, appeared and filed his answer. Under these circumstances it is supposed that they will be affected with *lis pendens.* The filing of the

bill and serving the defendants with the *subpœna* create the *lis pendens* in reference to the subject matter to the suit. 1 *Vernon*, 328, *anonymous case;* 1 *Story's Eq. Pl.*, sec. 156. A purchaser of property *pendente lite* will be affected by it as if he had actual notice, and the litigating parties are not bound to take any notice of the title so acquired, and the conveyance is treated as if it never had an existence. 1 *Story's Eq. Jur.*, secs. 405, 406 ; 2 *Story's Eq. Jur.*, sec. 908 ; *Feigley vs. Feigley,* 7 *Md. Rep.*, 537, 563 ; *Inloes' Lessee vs. Harvey,* 11 *Md. Rep.*, 519, 524 ; *Tongue vs. Morton,* 6 *H. & J.*, 23.

The next objection presented to a recovery appears to be made to the complainant on the ground that he took an assignment of the judgment against Leiman on the 2d of December, 1857. But it is supposed that O'Brien not having been a creditor at the time the deed of September, the 30th, 1852, was executed, can have no claim to set aside the same, and that the statute of limitations will bar the claim in the hands of the assignee when it would not affect it in the hands of the assignor. If limitations could not be pleaded against the claim in the hands of the assignor, it is difficult on principle to perceive how it can be pleaded against the assignee. *Act of* 1829, *ch.* 51. In this case the statute of limitations never commenced to run in favor of Leiman, and it is difficult to perceive how his fraudulent grantee can occupy a higher ground than the grantor could have done had the fraud not have been committed.

STEWART, J., delivered the opinion of this Court.

Several preliminary propositions discussed by the respective counsel in this case, will be disposed of before we determine the main question—the character and purport of the deed of the 30th of September, 1852, from Leiman to Schaferman. The plea of limitations having been interposed, was urged against the demand of the complainant, but we think it is not applicable under the circumstances of this case. In *McDowell vs. Goldsmith,* 24 *Md. Rep.*, 214, it was decided that

Schaferman *vs.* O'Brien, *et al.*

the confession of a judgment, by a fraudulent grantor, or his administrator, after the execution of the deed, would not defeat the plea of the statute of limitations made by the grantee. But, in that case, the claim was actually barred before the judgment was confessed, and it was held that the grantor could not voluntarily waive or defeat any right of the grantee. In this case, the judgment against the grantor was recovered before the claim had been barred by the statute—there was no waiver of any right or defence to the prejudice of the grantee.   The original cause of action was merged in the payment and the plea of limitations cannot avail.   The same point was expressly decided in *Williams vs. Banks*, 11 *Md. Rep.*, 198, where a judgment was confessed, after the deed was executed, but before limitations had barred the note upon which the judgment was confessed.   See *page* 234, *Glenn's claim ;* see also *Williams vs. Banks*, 19 *Md. Rep.*, 22, &c.   It has also been objected, that Schaferman, having conveyed the property mentioned in the deed to other persons, since the pendency of these proceedings, they ought to have been made parties.   If such a suggested fact could delay the cause, it might have become interminable.   Grantees, claiming the land under parties to the suit, or any of them, by title, derived *pendente lite*, are in no better condition than those under whom they claim.   *Tongue vs. Morton*, 6 *H. & J.*, 23.

It has also been insisted that the complainant having purchased the judgment against Leiman, subsequent to the deed, has no standing in Court—that such a purchase savors of champerty—is in violation of the statute of Henry VIII, ch. 9, recognized in *Kilty's Report*, as in force in this State. This statute prohibits under penalties, the buying or selling of any pretended right to land, unless the vendor is in actual possession of the same, or of the reversion or remainder.   "The ancient policy which prohibited the sale of pretended titles, as an act of maintenance, was founded upon a state of society which does not exist in this country."  4 *Kent*, 526.

The statute of Henry VIII, ch. 9, is not rigidly enforced in this country.  *Sedgwick vs. Stanton*, 14 *N. Y. Rep.*, 289.

"It will have been perceived that the subject of the assignment of rights of action, as tending to the common law offences of champerty and maintenance, is here left in a state of considerable uncertainty." The subject was examined in a late case, (*Danforth vs. Streeter,* 28 *Vermont,* 490,) and the following conclusion reached: "That the *bona fide* purchaser of a bond or other chose in action, which is represented to be due, and which the purchaser believes to be due, may sue upon the same and not incur censure from the law; and that all contracts founded upon any such consideration are valid. The same is true of any aid one may render another in a suit, by way of money or advice or other lawful assistance, if done under a *bona fide* belief in the justice of the case. It was upon these grounds that we ventured to suggest that the common law notion of maintenance, as applicable to the assignments of rights of action, had become practically obsolete." *Story's Eq. Jur.,* sec. 1057. "Maintenance now means, where a man, improperly and for the purpose of stiring up litigation and strife, encourages others, either to bring actions or to make defences, which they have no right to make." *Findon vs. Parker,* 11 *Mees. & Welsby,* 679, 682, *referred to in* 4 *Kent,* 531.

We are not aware of any case in the judicial history of this State, where the provisions of the statute of Henry VIII, have been enforced — without meaning to assert that there might not be such exceptionable conduct savoring of champerty and maintenance, as to be punishable, yet there can be no doubt that this statute is, in a great measure, now obsolete. Before the Act of 1829, ch. 57, the *bona fide* assignee of a chose in action, was considered as having peculiarly an equitable remedy, and certainly that statute enlarges his powers. It gives to the assignee of a judgment, specialty or other chose in action, the authority to sue, in any Court of law or equity, reserving to the defendant all such legal or equitable defences as might be maintained against the assignor." The necessity of a lien by a judgment, or otherwise, against the property, as

preliminary to equitable relief, is obviated since the Act of 1835, ch. 380. *Richards and Wife vs. Swan*, 7 *Gill*, 377. In the case before us judgment has been obtained against Leiman, the grantor, in the deed. The complainant, as assignee, being entitled to collect from Leiman this demand, existing as an original cause of action antecedent to the deed in question, has the right to pursue any property, for the payment of the same, belonging to Leiman, liable therefor, unless *bona fide* transferred to a purchaser for a valuable consideration.

The deed of the 30th of September, 1852, if it were an honest transaction between the parties, would afford protection to the grantee therein, against the claim which existed antecedent thereto, as the judgment thereon was not rendered until afterwards. On the contrary, if the deed was the result of fraudulent collusion between Leiman and Schaferman, to hinder and defeat the creditors of Leiman, it cannot receive the countenance of a Court of Equity. However solemn the instrument in its formalities, if it had its origin in fraud, it is a nullity, so far as the creditors of Leiman are concerned. "There is no ascertained rule of law which determines what acts or declarations of a party shall, in all cases, be requisite to establish fraud, each case must depend upon its own circumstances." *Richards and Wife vs. Swan*, 7 *Gill*, 369. "Badges of fraud vary, according to the capacity of the party and the end to be attained." "We must look for the motives and designs of the parties, to the circumstances surrounding the transactions, and every fact, however trivial, which can throw light upon the subject." *Feigley vs. Feigley*, 7 *Md. Rep.*, 562. Where a bill was filed to set aside a deed as fraudulent against creditors, Judge NELSON, of the Supreme Court, who delivered the opinion affirming the judgment of the Circuit Court, vacating the deed in that case, relied very much upon the unsatisfactory evidence, in respect to the payment of the consideration specified in the deed. "This proof," he said, "was vital in order to uphold a deed, in other respects surrounded with suspicion. The evidence was in their possession." He

referred also to the "continuance of the vendor in the posses-
sion and full enjoyment of the premises, the same after the
deed as before, and absence of interest manifested by the ven-
dee as circumstances not satisfactorily explained."

"The conveyance was made to a brother." "The vendee
seems to have taken no part in the management of the prop-
erty." "No proof was given by the defendants in respect to
the payment of the consideration." *Collan, et al. vs. Statham,*
23 *Howard,* 479. That case, in several of its features, was
not unlike this. The defendant, Schaferman, in his first
answer, states "he will specify, if necessary, how the con-
sideration for the said conveyance was paid, but he is advised
that it is a matter of testimony," but his promise to furnish
evidence upon that subject was not redeemed. His deed was
impeached, and upon that point he was specially interrogated
in the bill, and if he knew any thing of the matter, he must
have been cognizant of that, but it is left to conjecture, no
proof having been adduced. Schaferman conveyed back to
Leiman the same property, in the year 1857, but the instru-
ment is withheld from record, and does not come to the light
for a long time. When this suit was instituted, although he
had thus reconveyed to Leiman, he executes another convey-
ance to other parties, and from that fact suggests a question,
if such conveyance does not affect the past proceedings against
him, but makes no disclosure of the anterior deed to Leiman.
After the trial at law on the note is instituted, but before
judgment, this deed of September, 1852, from Leiman to
Schaferman is executed, and soon afterwards Leiman applies
for the benefit of the insolvent laws, returning no assets. The
rents of the property are quite regularly collected by Lei-
man or his wife, although Schaferman lived in the immediate
vicinity, and there is no testimony of their ever being paid
over to Schaferman. Leiman paid the ground rent after the
deed; Schaferman gave receipts for rent, although there is no
proof he received any.

Leiman contracts for a sub-lease to Henry Pfau, and Scha-
ferman executed the same. The property was mortgaged by

Schaferman to secure a debt due by Leiman. Schaferman said the property belonged to Leiman, and that it only stood in his name. There is no proof that Schaferman had sufficient means to pay the amount of the consideration, or that Leiman owed him considerably. Schaferman and Leiman were brothers-in-law. In the absence of any explanation as to the payment of the purchase money, except the presumption in the deed, which is only *prima facie,* all the circumstances referred to are *indicia* of fraud and collusion, and cannot be reconciled with plain and straight-forward dealing. If the transaction had been *bona fide,* certainly the grantee had the opportunity afforded, to relieve it of the imputation of fraudulent arrangement, to defeat the creditors of Leiman. Failing totally to do so when the issue is made, the developments, exposed by the testimony in the cause, must have their irresistible solution adverse to the integrity of the deed, as a righteous and genuine contract. Unexplained by any testimony throughout the record, they permit us to come to no other conclusion, than that they are beyond the power of satisfactory explanation, consistent with any theory of fair and honest transfer of the property. We are satisfied the decree of the Court below ought to be affirmed.

*Decree affirmed and cause remanded.*

(Decided 22d April, 1868.)