# MATTHEWS *v.* HEVNER.

DEEDS BY PERSONS OUT OF POSSESSION; CHAMPERTY AND
MAINTENANCE.

1. A deed of real estate is not void by reason of the grantor being out
   of possession, 32 Henry VIII., Ch. 9, prohibiting, as an act of
   maintenance, the conveyance of land held adversely, not being
   in force in this District.
2. Whether champerty and maintenance are recognizable as punish-
   able offenses under the laws of this District, and render void
   acts done in their commission, *quaere.*

No. 236.   Submitted January 14, 1894.—Decided February 5, 1894.

HEARING on an appeal by the complainants from a decree
of the Supreme Court of the District of Columbia, holding
an equity term, dismissing a bill to invalidate a deed of cer-
tain real estate made by a person out of possession.  *Affirmed.*

The COURT in its opinion stated the case as follows:

This is a suit in equity instituted to have a deed made by
a person out of possession of certain real estate declared null
and void on the ground of champerty and maintenance, and
as being in violation of the Statute of 32 Henry VIII., Ch.
9, relating to that subject, and assumed to be in force in the
District of Columbia.

On June 7, 1836, Mr. William W. Corcoran, having pur-
chased at a tax sale made by the corporation of Washington,
a piece of ground in this city designated as Lot five (5) in
Square one hundred and sixty-one (161), received a deed
therefor from the corporation.  What attempt, if any, was
made by Mr. Corcoran to take possession of the property
prior to 1876, does not appear.   But it seems that in the last-
mentioned year he did take possession, and inclosed the
property with a fence of some kind.   There have never been
any improvements made upon it, although a subdivision of
the lot was made and recorded, at what time does not appear

from the record. On May 14, 1886, while Mr. Corcoran was in possession, the defendant Peter Hevner procured to have a deed of conveyance of the property made to himself by the defendant George G. Campbell, a resident of Barbour county, in the State of West Virginia, who was at the time the owner of the record title. The consideration for this deed was the sum of $5,000 of which $1,000 was paid in cash, and the residue ($4,000) was to become due and payable "thirty days after a full and complete title to said lot should be finally ascertained and judicially settled to be in said Peter Hevner." Campbell, in his testimony in the case, says that there was to be a further cash payment of $1,000 which was never paid, and that only the sum of $3,000 was to be postponed until the final determination of legal proceedings; but the discrepancy between him and Hevner is immaterial in the consideration of the issues in this case. Peter Hevner subsequently conveyed the property to his daughter, the defendant Sarah Maud Hevner, without other consideration than natural love and affection; and on July 29, 1886, a suit in ejectment for the recovery of the property was instituted on the common law side of the Supreme Court of the District of Columbia, in the name of Sarah Maud Hevner against William W. Corcoran.

Thereupon, on October 12, 1886, Corcoran filed his bill in equity in the present cause to enjoin the suit in ejectment, for a discovery of the agreement between Campbell and Hevner, and for a cancellation of the deed from the former to the latter and of the deed from Peter Hevner to his daughter, as being void against the complainant. From this bill and from the answer to it of Peter Hevner and Sarah Maud Hevner, Campbell having failed to answer, the facts, as herein stated, appear, there being as to them no substantial controversy. The further fact also appears that, in the month of April, 1886, prior to his procurement of the deed to himself from Campbell, Hevner had some negotiations with Corcoran, or with the agents of the latter, the origin and precise character of which are enveloped in some mys-

tery; and the purport of them is differently stated by the parties. They had reference to an attempt to discover the owner of the record title. The bill alleges that Hevner sought pecuniary aid from the complainant in order to enable him to perfect the complainant's title; while Hevner denies this statement in his answer, but fails to give any satisfactory account of the negotiations. It is quite clear, at all events, that Hevner, having discovered the weakness of Corcoran's title, sought to take undue advantage of it for his own benefit.

On January 1, 1892, the defendant, Sarah Maud Hevner, filed a cross-bill to establish her own title; but this cross-bill was voluntarily dismissed by her on January 24, 1893, and has passed out of the case.

The only testimony that appears in the record is an abstract from the deposition of the defendant, George G. Campbell, in reference to the contract between himself and Peter Hevner. But the record, which is commendably brief, is amply sufficient to develop the questions that have been presented to us in argument.

Upon hearing in the court below, the bill of complaint was dismissed on May 24, 1893; and from the decree of dismissal the present appeal was taken by the complainants to this court, the complainants having in the meantime been substituted as the representatives of William W. Corcoran, who had departed this life soon after the institution of this suit.

*Messrs. C. M.* and *H. S. Matthews* for the appellants:

1. In an action of ejectment, in the United States courts, the strict legal title prevails; and if there be equities which show the right to be in another, these equities can only be considered on the equity side of the Federal courts. *Foster v. Mora,* 8 Otto, 425, 8; *Sherburne v. DeCordova,* 24 How., 423; *Pierce v. Jacobs,* 18 D. C., 498; *Butler v. Young,* 1 Flippin, 276. The distinction between courts of law and equity as known to the English law has been certainly preserved in our system of jurisprudence. *Smith v. McCann,*

24 How., 398. Jurisdiction in cases of the delivery up and cancellation of deeds is founded upon the principle *quia timet*, and because such deeds may be vexatiously used, and parties have the right to come into a court of equity to have such deeds delivered up and cancelled where they have a defense good in equity but not capable of being availed of at law. Daniel Ch. Pr., 1624; Story Eq. Jur., Sec. 694, 700; *Carroll* v. *Brown*, 28 Gratt., 795; *Reed* v. *Bank*, 1 Paige, 218; *Johnson* v. *Cooper*, 2 Yerger, 531; *Van Duren* v. *Mayor*, 9 Paige, 388; *Sherman* v. *Fitch*, 98 Mass., 61; *Kibbe* v. *Bender*, 19 Wall., 628; *Crim* v. *Handley*, 94 U. S., 658; *Daniel* v. *Stewart*, 55 Ala., 280; *Alden* v. *Turbee*, 44 Conn., 460; *N. P. R. R. Co.* v. *Paine*, 119 U. S., 563.

2. The deed from George G. Campbell to Peter Hevner was void according to the principles of the common law, which common law is in force in this jurisdiction. Section 5 of the Bill of Rights of Maryland provides that "the inhabitants of Maryland are entitled to the common law of England . . . and to the benefit of such of the English statutes as existed at the time of their first emigration and which by experience have been found applicable to their local and other circumstances."

Authority need not be produced in support of the contention that at the common law, livery of seizin being essential to the transfer of real estate, the feoffer must at the time of the feoffment have been in the actual seizin or possession of the subject of the feoffment, and this doctrine excluded the idea of a livery of seizin by one not in possession. It was a principle conformable to the whole genius and policy of the common law that the grantor in a conveyance of land (unless in the case of mere release to the party in possession) should have in him the right of possession. A feoffment was void without livery of seizin; and without possession a party could not make livery of seizin. 4 Kent Comm., 447; 4 Cruise Dig., 46; *McMahon* v. *Bowe*, 114 Mass., 145; *Tryon* v. *Rockfeller*, 63 N. Y., 274. Except where the land is adversely held, seizin follows the legal title. *Slater* v. *Ran-*

*som,* 4 Metc., 444; *Farwell* v. *Rogers,* 99 Mass., 33; *Sohier* v. *Coffin,* 101 Mass., 179; *McMahon* v. *Bowe,* 114 Mass., 144. Such was the law in Maryland. *Mason* v. *Smallwood,* 4 H. & McH., 484; *Lewis* v. *Beall,* 4 H. & McH., 488; *McKeel* v. *Warfield,* 4 H. & McH., 495; *Tyson* v. *Richards,* 3 H. & J., 116; *Carroll* v. *Norwood,* 5 H. & J., 164; *Matthews* v. *Ward,* 10 G. & J., 457. Decisions of the courts of the District of Columbia sustain this point. *Bank* v. *Benning,* 4 Cr. C. C., 83; *Frazer* v. *Hunter,* 5 Cr. C. C., 472. As also cases in the United States circuit courts. *Thomas* v. *Perry,* Peters C. C., 56; *Langworth* v. *Close,* 1 McLean, 293; *DuBois* v. *McLean,* 4 McLean, 487; *Wakefield* v. *Ross,* 5 Mason, 23; *Girard* v. *Philad.,* 2 Wall. Jr., 307; *Bunce* v. *Gallagher,* 5 Blatchford, 481, 491. And it is recognized by the Supreme Court of the United States as a subsisting feature of the law. *Green* v. *Leiter,* 8 Cranch, 244; *Burr* v. *Gratz,* 4 Wheat., 213; *Bradstreet* v. *Huntington,* 5 Pet., 432, 434, 436; *Noonan* v. *Lee,* 2 Black, 506; *Hogan* v. *Kurtz,* 94 U. S., 776; *Smith* v. *Gale,* 144 U. S., 516.

3. The contract of sale and the deed founded thereon from George G. Campbell to Peter Hevner, above alluded to, is void because forbidden by the statute (32 Henry VIII., Ch. 9) relating to champerty and maintenance. Section 2 of this statute provides that " no person or persons of what estate, degree, or condition soever he or they be shall from henceforth bargain, buy or sell or by any ways or means obtain, get or have any pretensed rights or titles, or take, promise, grant or covenant to have any right or title of any person or persons in or to any manors, lands, tenements or hereditaments; but if such person or persons which shall so bargain, sell, give, grant, covenant, or promise the same, their antecessors or they by whom he or they claim the same have been in possession of the same or of the reversion or remainder thereof or taken the rent or profits thereof by the space of one whole year next before the said bargain, covenant, grant or promise made." It was enacted in the year

1540, the common law being then as above stated, and it has been declared that its provisions are in affirmance of the common law, its purpose being to preserve the transfer of possession as an ingredient of title. *Partridge* v. *Strange*, 1 Plowden, 88; *Hoyt* v. *Thompson*, 3 Sandf., 430. This statute is to be found in Kilty's Report of "The British Statutes found applicable and proper to be incorporated," as printed in 1811 under the resolution of the General Assembly of Maryland passed in the year 1810. In the case of *Dashiell* v. *Atty. Gen.* (1822), 5 H. & J., 403, this report is spoken of "as a book compiled, printed and distributed under the sanction of the State for the use of its officers, and is a safe guide in explaining an otherwise very dubious path." It should be remembered that in this case of *Dashiell* v. *Atty. Gen.* it was decided that the statute of 43 Eliz., Ch. 4, the "Statute of Charitable Uses," was not in force in Maryland, and such decision was mainly because this statute was classed in Kilty's Report among the statutes "not found applicable." In Alexander's British Statutes, page 318, the statute 32 Henry VIII., Ch. 32, is discussed as a statute in force, and in no case in Maryland is it taken from that class of British statutes in which Kilty's Report places it. The following cases recognize the doctrine: *Britton* v. *Ridgely*, 4 H. & McH., 503, 508; *Young* v. *Frost*, 5 Gill, 314; *Cresaps* v. *Hutson*, 9 Gill, 275, 278; *C. & O. C. Co.* v. *Young*, 3 Md., 570.

5. No statute, either in Maryland or the District of Columbia, has so changed the law of this jurisdiction as to relieve a grantor in a deed from the necessity of being in possession of the property attempted to be conveyed. The act of the General Assembly of Maryland (1715, Ch. 47, Sec. 4) provides that "all sales and grants of lands, &c., made by deed, indented and enrolled since April 16, 1674, or that hereafter shall be so made and enrolled, shall be good and available in law without livery of seizin."

The only purpose of this statute was to substitute the record and enrollment of a deed upon books open to in-

spection of the public, for the common law ceremony of livery of seizin, but in no way can it be claimed that this statute does away with the necessity for seizin in the grantor of a deed, such seizin being essential as well according to the common law as under the statute of 32 Henry VIII., Ch. 9, relating to champerty and maintenance.

*Mr. A. A. Birney* and *Mr. T. W. Birney* for the appellees :

1. The statute of Henry VIII., Ch. 32, has never been enforced in Maryland, and is declared by the Court of Appeals of that State to be obsolete. *Schaferman* v. *O'Brien*, 28 Md., 565; Alex. Brit. Stat., p. 321, note. The purpose of the statute was early declared to be to " repress the practices of many, who, when they thought they had title or right to any land, for the furtherance of their pretended right conveyed their interest or some part thereof to great persons, and with their connivance did oppress the possessors." *Slywright* v. *Paige*, 1 Leon., 167. This doctrine, originating in the inequality of society in England, and the danger to the administration of justice arising from the power of nobles and great men, is repudiated in many of our States as wholly foreign to the conditions of life in this country. See *Roberts* v. *Cooper*, 20 How., 483. It has been expressly rejected in the following States, the reasons given applying with equal force in this District: Georgia: *Cain* v. *Monroe*, 23 Ga., 82; Iowa: *Wright* v. *Meek*, 3 Greene, 472; Illinois: *Willis* v. *Watson*, 4 Scam., 64; New Hampshire: *Hadduck* v. *Wilmarth*, 5 N. H., 181; Pennsylvania: *Stoever* v. *Lessee of Whitman*, 6 Binney, 416; New Jersey: *Schomp* v. *Schenck*, 40 N. J. L., 202; California: *Mathewson* v. *Fitch*, 22 Calif., 86; Ohio: *Lessee of Hall* v. *Ashby*, 9 Ohio, 96; Texas: *Bentwick* v. *Franklin*, 38 Tex., 458; South Carolina: *Poyas* v. *Wilkins*, 12 Rich. (Law), 420; Missouri: *Vancourt* v. *Moore*, 26 Mo., 92; Delaware: *Bayard* v. *McLane*, 3 Harr., 139.

In this jurisdiction the question has been many times decided at circuit, the holdings being uniform, that the statute

is not in force and that the deed of one out of possession is good.

The act of Assembly of Maryland of 1715, Ch. 47, Sec. 4, which provided that sales and grants of land made by deed thereafter should be good and available in law without seizin (Cogley's Dig., 240) necessarily repealed the common law as to maintenance, if it was ever adopted in that State.

2. The facts do not make this a case of maintenance. "Maintenance," says Hawkins, "seemeth to signify an unlawful taking in hand or upholding quarrels or sides, to the disturbance or hindrance of common right." Hawk. Pl. Crown, 393, Tit. Maint. The Supreme Court defined it as "a bargain to divide the land or other thing in dispute, on condition of his [the grantee] carrying it [the suit] on at his own expense." *Roberts* v. *Cooper*, 20 How., 484. It is not pretended that in this case there was any bargain to divide the land, the proven contract being that Hevner, after payment of part of the price, agreed to pay the remainder when his title should be judicially declared.

Mr. Justice MORRIS delivered the opinion of the Court:

The assignments of error are three. It is alleged that the court below erred: 1. In holding that the complainants had no remedy in equity; 2. In holding that the deed from Campbell to Peter Hevner was good at common law; 3. In holding that this deed was not void by virtue of the statute of 32 Henry VIII., Ch. 9. We proceed to consider them in the order here stated.

1. It is not apparent that any good ground for the intervention of a court of equity has been manifested in this case. If the deed from Campbell to Hevner is void as against the complainant Corcoran, for the reason that it was made by one out of possession, such invalidity can be shown in the pending suit in ejectment at common law as well as in this equity proceeding; and no discovery is needed in aid of that position. And if, on the other hand, a person out of the possession of property, but holding the title to it, is not pre-

cluded by law from making conveyance of such title, and
the conveyance is not void as against the person in posses-
sion, it does not seem to be of much consequence to the lat-
ter that the deed was the result of a champertous agreement
between the grantor and the grantee. At the most, in that
event, the champertous agreement would simply subject the
parties to it to the penalties provided by the statute or at-
tendant upon the offense of champerty and maintenance as
a misdemeanor. And as no specific ground of equity juris-
diction is shown in the bill other than the alleged invalidity
of the deed from Campbell to Hevner, and the propriety of
discovery to show the champertous character of the agree-
ment between these two, we do not see that the bill can be
maintained. It is not alleged that the deed is a cloud upon
title, or, indeed, that there is any title upon which it could
be a cloud. Nor does it appear that it is at all necessary to
the complainant's cause that the champertous character of
the contract between Campbell and Hevner should be es-
tablished. It is quite evident that Hevner's conduct in the
transaction was not dictated by the highest sense of honor,
but if he did no more, so far as the complainant is con-
cerned, than he was by law entitled to do, his motives and
his purposes, however unworthy, cannot be a ground for
the intervention of a court of equity. For it is not shown
that he bore to the complainant any such relations of trust
and confidence as would preclude him in equity from acting
in antagonism to the complainant's interests. It is evident,
therefore, that the only substantial question in the case is,
whether the deed from Campbell to Hevner was void, either
by the common law on account of the want of seizin in the
grantor, or in consequence of the provisions of the statute
of 32 Henry VIII., Ch. 9, against the conveyance of titles
by those out of possession.

2. This question, however, in view of the emphatic utter-
ance of the Supreme Court of the United States in the case
of *Roberts* v. *Cooper*, 20 How., 467, and of the general ten-
dency of judicial authority throughout the country, we can

scarcely consider any longer an open one in this jurisdiction. In the case to which we have referred, the Supreme Court, by Mr. Justice Grier, said: " In this country, where lands are an article of commerce; passing from one to another with such rapidity, the ancient doctrine of maintenance, which makes void a conveyance for lands held adversely, is in many States entirely rejected. In some it has been treated as obsolete by the courts; in others it has been abolished by statute; while with some it appears to have found more favor. *The ancient policy, which prevented the sale of pretended titles, and held the conveyance to a third person of lands held adversely at the time to be an act of maintenance, was founded upon a state of society which does not exist in this country.* The repeated statutes which were passed in reigns of Edward I. and Edward III. against champerty and maintenance arose from the embarrassments which attended the administration of justice in those turbulent times, from the dangerous influence and oppression of men in power. See 4 Kent's Com., 477.

" The earlier decisions of the courts of Michigan seem to have adopted this antiquated doctrine as a part of the common law in that State. But so far as concerns its application to sales by one out of possession, the legislature have annulled it."

It is very true, as indicated in the last sentence, that the case of *Roberts* v. *Cooper*, which went up from the State of Michigan, was controlled by express legislation in that State. But it is evident that, if there had been no such legislation, the decision, on general principles, would not have been different, unless the Supreme Court, in antagonism to its own views, would have felt itself bound in that case by the previous decisions, to which it refers, of the courts of Michigan. It is plain what its own views are on the general subject, apart from legislation or complicating decisions of the States; and those views must be our guide in the District of Columbia. It is unnecessary for us to seek other authority than this; but other authority is not wanting in the

courts of the State through which, if at all, we might be presumed to have inherited the statutes of England on this subject.

As early as the year 1718, in Maryland there seems to have been a prosecution under the statute of 32 Henry VIII., with what result we are not advised. Again in 1768, there was a *qui tam* action, as it was called, to recover the penalty under the statute for the purchase of a pretended title. The case is that of *Britton* v. *Ridgely*, 4 Harris & McHenry, 503; but there was no final decision of it by the courts; it was discontinued by consent. In the year 1830, in the case of *Gwynn* v. *Jones*, 2 Gill & Johnson, 173, it was held that "it is a case of constant occurrence that a grantor, having a right of entry on land, conveys it to another, and therewith necessarily the power to maintain ejectment for it." The statute does not appear from the opinion to have been urged in this case; but the question was directly involved.

In the case of *Cresap's Lessee* v. *Hutson*, 9 Gill, 269, a plaintiff in an ejectment suit, after the commencement of the action, but before trial, conveyed by deed his interest in the lands in controversy to a third party; and it was held that the pendency of the suit did not make the deed void; that, on the contrary, the deed was good, and the plaintiff was barred by it from recovery, inasmuch as the plaintiff, to recover in ejectment, must have the legal estate in him both at the commencement of the action and at the trial. This decision was rendered in 1851.

In the case of *Schaferman* v. *O'Brien*, 28 Md., 565, decided in 1868, the question was specifically raised whether the statute of 32 Henry VIII. was in force in Maryland. The court there said:

"It has also been insisted that the complainant, having purchased the judgment against Leiman subsequent to the deed, has no standing in court—that such a purchase savors of champerty, is in violation of the statute of 32 Henry VIII., Ch. 9, recognized in Kilty's Report as in force in this State. This statute prohibits under penalties the buying or selling

of any pretended right to land, unless the vendor is in actual possession of the same, or of the reversion or remainder.

"'The ancient policy which prohibited the sale of pretended titles as an act of maintenance was founded upon a state of society which does not exist in this country.' 4 Kent, 526. The statute of Henry VIII., Ch. 9, is not rigidly enforced in this country. *Sedgwick* v. *Stanton*, 14 N. Y., 289. . . . 'Maintenance now means when a man improperly and for the purpose of stirring up litigation and strife, encourages others either to bring actions or to make defenses, which they have no right to make. *Findon* v. *Parker*, 11 Meeson & Welsby, 679; 4 Kent, 531.'

"We are not aware of any case in the judicial history of this State, where the provisions of the statute of Henry VIII. have been enforced, without meaning to assert that there might not be such exceptionable conduct savoring of champerty and maintenance as to be punishable, yet there can be no doubt that this statute is, in a great measure, now obsolete."

From these references, although the statute of 32 Henry VIII., Ch. 9, is inserted both in Kilty's Report and Alexander's British Statutes, as being in force in Maryland, it is evident that both authors admitted it with some doubt and hesitation, which the courts have now dispelled by making it clear that the statute never has been actually enforced, and that it is undoubtedly obsolete.

We may add to this that, notwithstanding that there has been repeated occasion for its enforcement in this District, if it ever was the law, yet there is not a single instance of its application in our judicial annals. On the contrary, the statute has been uniformly repudiated in our practice; and numerous titles in the District of Columbia depend upon deeds of conveyance made in total disregard of its provisions.

We do not desire to be understood, however, as holding that champerty and maintenance are no longer reprehensible or criminal under our laws; or, as was intimated in the case

of *Schaferman* v. *O'Brien, supra,* that there may not be cases where the purpose of the parties to stir up litigation is so plain that their acts should be regarded as void. We simply decide that a deed made by a party out of possession is not in itself void by reason of the party's being out of possession.

We are of opinion that the court below was right in dismissing the bill in this case; *and we therefore affirm its decree with costs.*