[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 291 
The defendant insists upon the illegality of the contract, as the ground of defence to this action: First. That the contract was void as against public policy, and second, because of its champertous character. There is no ground upon the facts of this case for the allegation of either of these defences. As to the first, no principle of the public law of the state was infringed by the terms of the contract or the manner of its performance; and as to the second, the doctrine of champerty does not prevail in this state, except so far as it is recognized by statute, which has no application to this case.
Contracts illegal at common law, as being contrary to public policy, are such as injuriously affect or subvert the public interest (1 Story Eq. Jur., § 259, note), such contracts as by their terms or contemplated manner of performance must work some mischief affecting the body politic. Comyn in his work on contracts, p. 53, says: "All contracts or agreements which have for their object anything which is either repugnant to justice, or in violation of religion or public decency, are void. So are all contracts made in contravention of the general policy of the common law, or in direct opposition to the provisions of an act of parliament, for ex turpi contractu actio non oritur is a rule both of law and equity." *Page 292 
This doctrine of the law is fully adopted by the courts in this country, and is essential to the good order of society and the just administration of public affairs. The coercive power of the law is withheld, to compel the performance of any contract,inter partes, which has for its object the commission of a public offence or wrong, although not per se criminal. The cases where the doctrine of public policy has been applied most commonly are in respect to contracts made in restraint of trade, of marriage, those which affect injuriously the legislation or administration of justice of the state, wager contracts and contracts affecting the public morals. The adjudications in this class of cases proceed on the ground of some public injury which the performance of the stipulations of the parties would be likely to produce. The aid of the law is not withdrawn from any consideration of the rights or equities of the parties, as between themselves, but solely to prevent an infringement of the public law or policy of the state.
In the case at bar, no public interest was violated in the execution of the contract. The defendant's preëmption right to the lot was fully recognized by the government in the appraisal of his erections, under the act of 1848, at a sum exceeding $200. The purpose of the contract was to induce the commissioners of the land office to act upon the question, and to determine whether the state needed the lot to be reserved for the use of the canal or salt springs. The commissioners, as a body, had previously omitted to act on the subject. It was the defendant's right to urge and to procure this determination; and to this end he could call in the services of an agent to act in his behalf, and to stipulate for a reasonable compensation. In such an agency the public would have no interest. If it were legitimate to look into the manner of the performance by Trowbridge of the contract, in order to determine the intent of the parties when the agreement was entered into, it would be found that no just exception could be *Page 293 
taken. His services were all performed before the board of commissioners as a body. In the case of Harris v. Roof'sExecutors (10 Barb., 489), the contract was declared illegal, because all the services of the agent were performed with individual members of the house, and not before the house as a body, or its authorized committee. I can see no objection to the employment of an agent or attorney to appear before the legislative body, or a committee thereof, to procure a recognition of a claim against the state, and to the payment of compensation therefor. It is quite a different thing to stipulate for a purely lobby agency.
It seems to me, therefore, that no principle of public policy was infringed by the contract in question. Its object and the manner of its performance are entirely legal.
The judgment must therefore be affirmed.