BARKER v. CAIRO AND FULTON RAILROAD COMPANY, appellant.

*Contract — legality of — stockholder employed as attorney of corporation. Evidence — opinions of witnesses as to value — effect of receiving improper testimony.*

R., a lawyer, was employed to, and did perform certain services for a railroad company in which he was a stockholder, in procuring the release of a mortgage upon its property, the surrender of certain of its bonds, the release of its liability on a contract, and the extension of a land grant, and in taking care of the surrendered bonds, etc., etc. *Held*, (1) that the fact that R. was a stockholder did not preclude him from being retained and recovering for the services in question; and, (2) that the presumption was that the services were legal.

Where particular services were sued for, and the sums charged for the same were specified in a bill of particulars, *held*, that the opinions of witnesses, called as experts, should have been confined to the value of the services so specified; and that it was not competent to prove the value of all the services, in a lump, including supposed services beyond those sued for.

*Held*, also, that the errors of the referees, in receiving such testimony originally, and in denying a motion to strike it out, were not cured by a statement in their findings that, in deciding the case, they excluded the evidence from consideration.

APPEAL from a judgment entered upon the report of three referees.

The action was brought by the plaintiff, Benjamin Barker, as assignee of Addison G. Rice, to recover for services rendered by Rice as an attorney and counselor of the supreme court of the State of New York, in and about the business of the defendant — a corporation created by the laws of the State of Arkansas — from January to November, 1870, and from March to November, 1871, for which the plaintiff claimed, on a *quantum meruit*, the sum of $85,000;

and for $2,000 paid by Rice for the use of the defendant, and at its request.

The answer of the defendant admitted its incorporation, and denied each and every other allegation of the complaint. It also set up, by way of recoupment: 1. The sum of $15,000, moneys had and received by Rice; 2. The sum of $15,000 paid to Rice in full settlement and discharge of all claims and demands against the defendant.

. A bill of particulars of the plaintiff's claim was furnished, which embraced a charge of $25,000 for negotiating for and procuring a release of a mortgage for $5,000,000, a charge for expenses of a journey to Washington in negotiating such release, and for drafting and engrossing the release; also, charges for negotiating contracts for the surrender of bonds, drawing papers and releases, traveling expenses, etc.; for legal opinions as to the company's rights; for general services in procuring an extension of a land-grant, and traveling expenses connected therewith; for services as attorney and counsel in certain suits; for collecting, safe-keeping and surrendering to the company old bonds; for various services of a miscellaneous character, etc., etc.

On the trial before the referees, the following hypothetical question was put to certain witnesses, who were counselors at law, viz. : " In the case of a railroad company having a good charter for a railway 300 miles in length, extending from a point near the Mississippi river through the heart of the State of Arkansas, and through its capital to the north-eastern boundary of Texas, and having a grant of about two million acres of land along the line of its road, made in 1853, and worth, say, $5,000,000, with a construction contract in the hands of men hostile to the company, and unable pecuniarily to build the road, or keep its land-grant in life, with a mortgage on its franchise and corporate property for $5,000,000, and bonds on the same, actually issued and in the hands of parties hostile to the company, to the amount of $1,500,000, with its books and papers and about $3,000,000 of executed and unissued bonds, sold at sheriff's sale and in the hands of hostile parties and beyond its control, with its land-grant about to expire by reason of its failure to build the road, with combinations existing in Arkansas and among rival interests, which, added to its own want of means and credit and disorganized condition, rendered a renewal or extension of its land-grant almost or quite hopeless

without a re-organization of the company and a change in its management and adjustment of its complications, and a reconciliation of various conflicting interests, and with its stock and bonds worthless, what, in your opinion, would it be worth for a person occupying a position and having the ability, skill and energy requisite for the purpose to effect a re-organization of the company, a release of the mortgage and outstanding construction contracts, a surrender of the books, papers and bonds, and an extension of its land-grant, so as to make the stock of the company, in less than two years, worth, say $1,500,000, such person paying his own expenses and pledging his own credit and responsibility to the amount of $130,000 in bringing about these results ? "

The question was allowed to be put, and the answers were received subject to objection, with the understanding that all objections and exceptions could be taken at any time, with like effect as if taken at the time the evidence was offered. The objections were afterward stated and overruled, and the defendant excepted. After the plaintiff had rested, the defendant moved to strike out all evidence in response to the question, which motion was denied, and exception taken. At the close of the defendant's case the motion was renewed, in pursuance of the right reserved, and again denied.

In determining the case, the referees found that the facts assumed in the question were not sufficiently established by proof to authorize them to consider the evidence of any of the witnesses predicated on the hypothesis, in determining the question of value, and they did not consider such evidence in deciding the case, but wholly excluded the same from consideration.

The referees reported that the plaintiff was entitled to recover the sum of $26,155.

*C. S. Cary & Ashbel Green*, for appellant.

*D. H. Bolles*, for respondent.

GILBERT, J. The appellant's counsel has not shown us any reason for depriving a lawyer, who had been retained by a corporation, to perform specific services on its behalf, of his compensation, because certain contracts made at the same time, between the president of the corporation and third persons, having relation to the same objects, were illegal. Nor have we found any authority for that

proposition. It would be a great hardship if he were bound thus to probe the purposes of his client, to find out whether they were honest or not, before he engaged in his service; and the hardship would be still greater if he were bound to the same duty in respect to the private contracts of the president of the corporation. We think there is no such rule. Nor does the fact that the lawyer employed is a stockholder, or otherwise interested in a corporation, incapacitate him in the slightest degree from being retained in its business, or from recovering payment for services rendered on such retainer. The only legitimate effect such a fact can have, is to render necessary, clearer and stronger proof of such retainer. Whether the requisite proof on this subject was given in the present case is a question which we shall not decide, as we have concluded to grant a new trial upon another ground, which will be stated presently, and the plaintiff may give further evidence on that subject.

With respect to the point that the evidence showed that the employment of Mr. Rice was illegal, we think it does not sufficiently appear that the nature of the services actually rendered by him were such as the law condemns. We cannot draw inferences not warranted by the evidence in the case. On the contrary the legal presumption is, that the services were legal and proper. Services like those of Mr. Rice, performed openly, and without the use of sinister means, are not illegal. *Sedgwick* v. *Stanton*, 14 N. Y. 289; *Wildey* v. *Collier*, 7 Md. 273; *Lord Howden* v. *Simsbey*, 10 A. & E. 793; *Taylor* v. *Chichester Railway Co.*, L. R., 4 App. Cas. 628.

Some of the objects embraced in the contracts, made on the same day Mr. Rice was retained, are unquestionably against public policy, and, therefore, such as the law will not aid or sanction. Whether Mr. Rice was so far implicated in them as to vitiate his employment, it is not necessary or proper now to decide, for the reason before stated.

We think the hypothetical question put to the witnesses called as experts was inadmissible. It was based on supposed services in excess of those sued for, and went quite beyond the limits of the evidence. The particular services sued for, and the sums charged for the same, were specified in a bill of particulars. The opinions of the witnesses should have been confined to the value of the services so specified, and we think it was not competent to prove the value of all the services in a lump. The evidence should not have been received originally, and the motion made by the defendant to

strike it out should have been granted. Nor were these errors of the referees cured by their finding, that in deciding the case they excluded the evidence from consideration. There is no finding expressly against the evidence, and we cannot decide as a legal proposition that it did not influence the judgment of the referees. The authorities on this subject are uniform in condemning the practice pursued by the referees. *Wagener* v. *Finch*, 65 Barb. 493 ; *Allen* v. *Way*, 7 id. 585 ; *Haswell* v. *Bussing*, 10 Johns. 128 ; *Penfield* v. *Carpender*, 13 id. 350 ; *Livermore* v. *Bainbridge*, 44 How. 362, and cases cited. We think such a practice peculiarly dangerous in a case like this, and are not, therefore, disposed to relax the rule on the subject. We have not considered the other exceptions in the case.

For the error stated the judgment should be reversed and a new trial granted, before other referees, with costs to abide the event.

*New trial granted.*