# N. Y. SUPERIOR COURT.

## William J. Pease agt. Maurice J. Walsh.

*Action to recover for services in procuring a lease from public officers.*

Courts will never aid either party to enforce a contract which is prohibited by positive law or is opposed to public policy or is contrary to good morals. When the consideration is vicious, the contract begets no obligation.

The plaintiff alleged in his complaint that he was employed by the defendant to use his influence with the department of docks of the city of New York, for the purpose of procuring for the White Star Line Steamship Company a lease of piers Nos. 51 and 52 on North river, for the term of one year or more, at as low a rent as $50,000 per annum, for which use of his influence the defendant agreed to pay the plaintiff $15,000.

The plaintiff claimed to have used his influence with the commissioners of docks, and to have succeeded in procuring such lease, at the annual rent of $45,000, for one, with a privilege of renewal for fifteen years, and claims from the defendant, on his refusal to pay, the sum of $15,000, in fulfillment of the contract.

*Held,* on demurrer to the complaint, that the contract was contrary to morality and public policy. Judgment for the defendant on the demurrer, with liberty to the plaintiff to amend on the usual terms.

*Special Term, June,* 1875.

This is an action brought to recover $15,000, which sum the plaintiff claims to be due him for services rendered to the defendant in procuring, by means of his influence, from the commissioners of docks, for the use of the White Star line of steamers, a lease of piers 51 and 52 North river. It seems that the defendant contracted to pay plaintiff the above mentioned sum of money if he should succeed in procuring a lease of the said piers for the annual rent of $50,000. The plain-

tiff did procure this lease for $5,000 less than the sum agreed upon, and for a term of fifteen years, and the defendant not having paid the plaintiff for his services, this suit was brought. The defendant interposed a demurrer to the complaint, on the ground that this contract was void, it being one to influence public officials, and therefore against public policy.

VAN VORST, *J.* — No right of action can spring out of an illegal contract, nor will the court aid either party to enforce a contract which is prohibited by positive law or is opposed to public policy, or if it be contrary to good morals. When the consideration is vicious the contract begets no obligation. The plaintiff alleges in this case that he was employed by the defendant "to use his influence" with the department of docks of the city of New York, either with all or some one member of the same, and in such manner as he might see fit and proper, for the purpose of procuring for the White Star Line Steamship Company a lease of piers Nos. 51 and 52, on North river, in the city of New York, for the term of one year or more, at as low a rent as $50,000 per annum, for which use of his influence the defendant agreed to pay the plaintiff $15,000, if the lease was procured on those terms. The plaintiff claims to have used his influence with the commissioners of docks, and to have had many interviews with some one member of the same, and to have finally succeeded in procuring a lease from the dock department for the White Star line, at an annual rent of $45,000 for one, with a privilege of renewal for fifteen years. The complaint does not show the plaintiff's business or profession, nor that the services to be rendered by him were those of a lawyer, broker, agent or person devoted to any special lawful pursuit, in itself either useful or valuable. The consideration to support a contract must have some appreciable value, moving to the party obliged. The cause of action disclosed by the complaint may be regarded either as sale of the plaintiff's "influence" in the direction indicated, or as an agreement to exercise it

over all or some one of the members of the dock commission, for the sum of $15,000, the payment, however, dependent upon the success of this influence to secure the lease in question. Judged by the allegations in the complaint the influence was successful, for, as plaintiff claims, it secured a lease for fifteen years instead of one, and at an annual rental $5,000 less than the sum the defendant was willing to pay for a lease of the piers in question. It may be well judged that the members of the dock commission are not to be moved to the granting of leases of public docks and piers through the influence of the plaintiff, exercised over one or more of its members. To yield to such suggestions, and throw a loose rein on such practice, would lead to the sacrifice of public and private interests and morals. How such influence, through one, over all the members of the commission, could be exercised in a truly useful manner, is not disclosed, and it is difficult to be conceived. The dock commissioners are public officers, upon whom rest responsible duties. They have the care and oversight of the docks, wharves and piers. The board may appropriate any of such wharves or piers to the sole use of special kinds of commerce, and may, in the name and for the benefit of the corporation of the city of New York, lease any or all of such property, for a term not exceeding ten years each. All leases, other than for districts appointed by the board, to special commercial interests, shall be made at public auction, to the highest bidder (*Session Laws of* 1871, *chap.* 574; *Laws of* 1870, *chap.* 583, *sec.* 37). The setting aside of districts for special kinds of commerce is doubtless a great public convenience. The result is to gather, and, perhaps, limit, to some distinct quarter the separate branches of commerce of which this city is the center. Such appropriation and designation would depend upon the good, impartial judgment of the commissioners, so as best to meet the convenience of all concerned, and is not to be controlled or swayed by the influence of a party interested in procuring a lease for a particular steamship line of a pier to be devoted to its exclusive use. Any secret influence of this kind could not be other

than pernicious. With regard to leases to be granted to the highest bidder at public action, no influence to control, thwart, or defeat such method could be sanctioned. The tendency of judicial decision is to frown upon all efforts, by the exercise of illegitimate influence, to control the deliberations, judgments and action of public bodies and officers. In *Harris* agt. *Roof's Executors* (10 *Barb.*, 489), it was decided that no action will lie for services as a lobby agent, in attending to a claim against the state before the legislature, agreements in respect to such services being against public policy and prejudicial to sound legislation. In *Dawson* agt. *Seymour* (1 *Bos.*, 88), the plaintiff was employed by the firm of H. C. Seymour & Co. to procure for the firm, from the directors of a railroad company, a contract for the building of its road, and agreed to pay him for his services, should he succeed in obtaining the contract, the sum of $10,000. The contract was obtained by the plaintiff, through the influence with the directors of third persons employed by him, his own agency being concealed; it was held that the agreement was contrary to morality and public policy. In *Gray* agt. *Hook* (4 *Comst.*, 449), it was held that an agreement to pay a person for his aid and influence in obtaining an office is illegal and void (*Sedgwick* agt. *Stanton*, 14 *N. Y.*, 289). *Burke* agt. *Child*, decided in the supreme court of the United States in October term, 1874, would seem to establish that claims of the nature of the one disclosed in this action cannot be enforced by the courts. This latter is a highly important case, and, whilst it may be said that it announces no new principle, its cogent reasoning applies a law of condemnation to the present and kindred claims. That any influence was, in fact, exercised over any member of the dock commissioners to secure the lease in question, rests exclusively upon the plaintiff's allegations, made for the purpose of recovering his alleged compensation from the defendant. The question is now raised upon a demurrer to the plaintiff's complaint. There should be judgment for the defendant on the demurrer, with liberty to the plaintiff to amend on the usual terms.