CULLEN, J.
The plaintiff, a tenant of premises fronting on a street in the city of Brooklyn upon which an elevated railroad had been constructed, entered into the following agreement with the defendant:
“This indenture, made this 6th day of October, 1892, between T. R, Browne and George P. West. Whereas, the first named party is the owner of certain real estate situated on the west side of Fulton street, in the city of Brooklyn, and known as ‘Numbers 304 and 306,’ which said property has been damaged by construction and operation of the Kings county Elevated Railway, for which damage the first named party purposes bringing suit against said railway *605 company: Now, therefore, it is hereby mutually agreed the the said West shall bring or cause to be brought in the name of the party of the first part a suit against said elevated railway company to recover the damages, and for such other and further relief as thesaid party of the first party may be entitled to; that West shall have and receive as and for his compensation fifty per cent, of all money recovered or damages, either on settlement or otherwise; and he shall pay all court costs, including attorney and counsel fees, on the part of the first named party; and the party of the first part shall not be liable to said West for any further sum than the fifty per cent., as aforesaid, to be obtained on settlement of such claim or out of such suit; and the said West agrees to bring such action and to prosecute the same with all proper diligénce for the compensation aforesaid, and to account to the party of the first part for fifty per cent, all damages received by him in such action."
In pursuance of this agreement an action was brought in the name of the plaintiff against the Kings county Elevated Railroad Company by Theodore B. Gates, as attorney, to recover damages. In that action the plaintiff was unsuccessful, and the defendant therein recovered judgment for some $30 costs, which the plaintiff was compelled to pay. Thereupon he brought this action against the defendant to recover that sum.
The first question to be determined is whether, by the terms of the agreement between the parties, the defendant was bound to in- ’ demnify the plaintiff from any costs which might be recovered' against him in a suit against the railroad company. On the trial of the action the court permitted evidence of a conversation between the parties and the oral statements of the defendant to show that by the contract the defendant was to indemnify the plaintiff against such liability. This evidence was improperly received. The written contract expressed the agreement between the parties, and could not be varied or extended by oral evidence. This error, however, was harmless, as, in our opinion, under the proper construction of the written contract itself, the defendant was bound to indemnify the plaintiff against any costs that might be recovered against him.
The question then arises whether this contract thus construed is illegal. At common law it was unquestionably bad, and could not be enforced, and the making of such an agreement was criminal. But it has been settled by authority that the common law relating to champerty and maintenance no longer obtains in this stata This was so held in Sedgwick v. Stanton, 14 N. Y. 289, and reiterated in Fowler v. Callan, 102 N. Y. 895,1 St. Rep. 1. In the earlier case it was said that the reasons upon which the ancient doctrine was based—the danger of the support of unfounded claims by great lords and powerful nobles—had ceased. In the latter case Judge Finch said:
“ It does not affect the validity of the contract between the attorney and his client that, measured by the old rules relating to champerty and maintenance, it would have fallen under their condemnation ; for neither doctrine now prevails, except so far as preserved by our statutes.”
*606 In the case before us the defendant is not an attorney of this state. As to the contract here in suit, he stands as a layman.
The only statutory provisions relating to champerty or maintenance now in force are sections 73 and 74 of the Code, and relates solely to attorneys. The case of the defendant therefore does not fall within the terms of the statute. The cases cited are authority not only for the doctrine that agreements for maintenance, except as condemned by our statute, are not criminal, but that they are valid and enforceable. The defendant relies largely on the authority of Lyon v. Hussey, 31 N. Y. Supp. 281, decided by Mr. Justice O’Brien at special term, which decision was affirmed at the general term. In that case the plaintiff, a layman, agreed not only to pay the necessary expenses for the prosecution of the suit, but to procure evidence to enable the defendant to recover in the action the subject of the agreement. It was held that the agreement was void. While some of the expressions in the opinion of the learned judge were sufficiently broad to condemn the agreement now before us, the substantial ground on which the decision, proceeded was that the plaintiff had agreed to furnish evidence. Such an agreement was held void as against public policy. In the brief memorandum written by the court on appeal its affirmance is placed upon this ground. It was held that such agreements would lead to the introduction of fraud and deception in proceedings before courts of justice, and hold out premium for subornation of perjury. In the present case that element is wholly wanting. So far as the opinion of Mr. Justice O’Brien seems to-indicate that, while agreements for maintenance are no longer criminal, still they are to be regarded as against public policy as-leading to or promoting strife and litigation, we think it is in conflict with the decisions of the court of appeals already cited by us.
The judgment and order appealed from should be affirmed,, with costs.
All concur.