(124 N. W. 706.)

---

CHARLES H. BURKE v. ADAM SCHARF.

Opinion filed November 19, 1909.

Rehearing denied January 5, 1910.

**Champerty and Maintenance — Law in Force in This State.**

1. The common-law doctrine making void, as against a person in possession, a deed of land adversely held as against the grantor, where the grantor has not been in possession of the land or received the rents thereof for a period of at least one year, remains in force in this state. (Galbraith v. Payne, 12 N. D. 164, 96 N. W 258, followed.)

**Champerty and Maintenance — Deed by Person out of Possession.**

2. Section 8733, Rev. Codes 1905, prescribes that it shall be a misdemeanor to convey a pretended title by a person out of possession not receiving the rents of the premises for one year. Deeds executed in violation of that section are void as to the persons in possession. and as to them the title is in the grantor, notwithstanding such deed.

**Quieting Title — Adverse Claims — Right to Possession Adjudicated.**

3. Under chapter 5, page 9, Laws 1901, an action to determine adverse claims and to quiet title may be brought by one in possession or by one out of possession, and the right of possession may be determined in such action, and a restitution of the possession may be adjudged in the decree.

**Vendor and Purchaser — Vendee's Possession Is that of Vendor.**

4. Under contracts for the purchase of real estate where possession is given to the vendee by the vendor, such possession is that of the vendor, while the contract remains in force and until it is complied with or repudiated, and such possession is not adverse to the vendor.

**Vendor and Purchaser — Purchase of Outstanding Titles — Estoppel.**

5. While the contract remains in force, and the vendee remains in possession thereunder, he is estopped from buying an outstanding title, and thereby repudiate the vendor's contract and at the same time retain the possession secured by him by virtue of the contract.

**Vendor and Purchaser — Champerty and Maintenance — Purchase of Outstanding Title.**

6. Where an action is brought by one out of possession against the vendor and vendee in such contract, and the plaintiff in that action has legal title to the land and conveys such legal title to the vendee, and the action is afterwards dismissed this does not constitute a constructive eviction of the vendee, entitling him to retain possession under the title thus purchased against the vendor on the contract, as such deed to him is void and champertous as against the vendor in possession.

**Champerty and Maintenance—Purchase of Outstanding Title — Conveyance to Grantee in Possession.**

7. When the holder of the legal title to real estate who is out of possession conveys such title to a third person who is not in possession of said real estate, and at the same time said holder of the legal title conveys to one who is in the legal possession of said premises* through a vendee holding under a contract for the purchase of the land, and the deed to the person not in possession is first delivered, said first deed is void on account of the adverse possession of the land as against the grantor, and the second deed, after its delivery, becomes effective, and conveys the legal title to the premises.

Appeal from District Court, Ramsey county; *Cowan,* J.

Action by Charles H. Burke against Adam Scharf to determine adverse claims to real property, and to quiet title. Judgment for plaintiff, and defendant appeals.

Affirmed.

*Anderson & Traynor* and *Guy C. H. Corliss,* for appellant.

*Burke, Middaugh & Cuthbert,* for respondent.

MORGAN, C. J.  The complaint of the plaintiff states the following facts:  On the 26th day of April, 1901, the defendant and

one Brown entered into a contract in writing whereby the defendant purchased from said Brown 160 acres of land in Ramsey county, N. D., for the agreed price of $1,600, payable by delivering to said Brown one-half of the crops grown upon said land each year. The defendant has paid upon said contract the sum of $516.88, in two payments, the last payment having been made in January, 1903, and no payments have been made after that date, although the defendant has raised crops upon said land during other years, but has not turned over the proceeds thereof; that said Brown has sold and transferred, by a quitclaim deed, all his right, title and interest in the land and in the contract, to plaintiff herein; that on the 3d day of January, 1905, the plaintiff served a notice upon the defendant wherein his defaults in making payments upon said contract were recited, and he was required by said notice to comply with the terms of the contract within thirty days from the date of service of said notice upon him; that the said notice was personally served upon said defendant, and on the 19th day of September, 1905, the plaintiff caused to be served upon said defendant a further notice in writing wherein and whereby he was notified that the contract entered into by him and said Brown, which had been duly assigned by said Brown to the plaintiff, was canceled, terminated, and ended, and the defendant was further required to relinquish possession of said premises. In said notice, the note which said defendant had given to said Brown for the purchase price of said land, dated April 26, 1901, for the sum of $1,600, was offered to be returned to the defendant; that the defendant refused to accept said promissory note, and the plaintiff thereafter caused the same to be deposited in the Ramsey County National Bank of Devils Lake, with instructions to said bank to deliver it to said defendant without conditions upon his demand therefor.

The complaint also contains the following allegations: "That, by reason of the premises, defendant's right to said premises and the possession thereof have ended, and the plaintiff is the owner in fee simple and entitled to the immediate possession of said premises and the whole thereof, and on information and belief that the said defendant claims certain estates or interests in, or lien, or incumbrances upon said premises adverse to the plaintiff." The prayer for relief is in the following language: "Wherefore, plaintiff prays judgment that it be adjudged and decreed that

the said defendants be required to set forth all their adverse claims to the property above described, and that the validity, superiority, and priority thereof be determined; (2) that the same be adjudged null and void, and that they be decreed to have no estate or interest in, or lien, or incumbrances upon said property; (3) that this title be quieted as to such claim, and that defendants be forever debarred and enjoined from further asserting same; (4) that he recover possession of the premises described (if possession be desired); (5) that he have such other general relief as may be just, together with costs and disbursements."

The defendant appeared and answered, setting forth the following facts: After admitting the making of the contract, and that crops were grown on said land during the years 1903 and 1904, and that no payments were made upon said contract except those set forth in the complaint, and that the defendant did not accept the return of the promissory note, and that the notices set forth in the complaint were duly served upon the defendant, the answer alleges that all defaults were waived by the plaintiff by reason of his delay in forfeiting said contract. The answer further contains a denial that the plaintiff or said Brown is, or ever was, the owner of said premises or in possession thereof. The answer further alleges that the defendant is now the owner in fee simple of said land, by virtue of a conveyance thereof to him from one Verone Deutz, who was the owner thereof on the 19th day of December, 1903, on which day she conveyed the same to this defendant; that said Verone Deutz was the absolute owner of said premises by virtue of having title thereto through regular conveyances in regular chain from Howard, the original owner and patentee of said land. The answer demands the following relief: "Wherefore, the defendant asks that he be decreed to be the owner in fee simple of the above described land; that the plaintiff be decreed to have no interest in said property; that the title to said property be quieted in said defendant; that the defendant have possession of the promissory note, for his costs and disbursements herein, and for such other and further relief as the court deems equitable."

The complaint sets forth a cause of action to determine adverse claims. The facts show that the plaintiff claims to be the absolute owner of this land, through a sheriff's deed under a foreclosure of the Howard mortgage, and alleges cancellation and forfeiture of the

contract between Brown and the defendant. The complaint is drawn under chapter 5, p. 9, laws 1901, prescribing when an action to quiet title and determine adverse claims may be brought by one in possession, or by one out of possession. This was intended, and does serve the same purpose as the action of ejectment under the old practice. Under this act, title to land may be determined and possession of land decreed to the party having the title thereto, after proper proceedings. In other words, the title to land and restitution of the possession may be decreed in an equitable action brought to determine adverse claims and to quiet title under said chapter.

The defendant answers by setting forth absolute ownership in himself, and asks for affirmative relief; that the title be quieted in him by virtue of such ownership under the Deutz deed. The district court made findings of fact and conclusions of law in favor of the plaintiff and against the defendant, and ordered judgment in favor of plaintiff quieting the title in him, and ordered that the plaintiff have possession of said premises. The judgment or decree did not adjudge that the plaintiff have possession of the premises. The defendant has appealed from the judgment entered pursuant to such findings of fact and conclusions of law, and demands a review of all the evidence under the provisions of section 7229, Revised Codes 1905.

The following facts are conceded: Both parties claim title through Howard as their source of title, and he was the patentee of the land from the United States government. Plaintiff claims through a sheriff's deed under foreclosure of a mortgage given by said Howard. This foreclosure is conceded to have been invalid. It is not disputed that Brown was in possession of the premises under the sheriff's deed, or that he placed the defendant, Scharf, in possession of said land under the executory contract for the purchase of said land, set forth in the plaintiff's complaint. It is also now conceded that Scharf has never been out of such possession under said contract since April 26, 1901, when said contract was entered into. No person has ever been in actual possession of said land except the plaintiff, or Brown, or the defendant, since the year 1886, when Howard left said premises. On June 1, 1901, one, Joseph Blass, who continued to be the owner of the fee to this land on account of said invalid foreclosure, conveyed the same to one Walters, for a nominal consideration of $5.50, and, on the

same day, said Blass conveyed the same to said Brown for a consideration of $5.50. The Walters deed was delivered first, although both deeds were mailed to the respective grantees at the same time, but the Brown deed was sent to a bank at Devils Lake with instructions to deliver to him when said consideration was paid, which caused the delay in the delivery of this deed. The plaintiff contends that the Walters deed was void under the provisions of section 8733, Rev. Codes 1905, making it a misdemeanor to convey a pretended title unless the grantor has been in possession of the land, or received the rents thereof for a space of one year before the giving of the deed. It is beyond dispute that the land was then adversely held as against Blass, by Brown or Scharf, and that Blass had not been in possession thereof, nor had he received the rents thereof for more than one year prior to giving such deed. The defendant claims that Blass' deed could not convey and did not convey any title to Brown for the reason that there was no title that Blass could convey to Brown after the Walters deed. In other words, the contention is that the Brown deed was a nullity because Blass had conveyed all of his title to Walters, and, because that deed was first delivered, the Brown deed never became effective for any purpose.

Conceding, for the purpose of this case only, that the Brown deed was subsequent to the Walters deed because held by the bank until the consideration was paid and until after the Walters deed was delivered, we cannot agree with the conclusion that the Brown deed was a nullity. When the Walters deed was executed and delivered, neither Blass nor Walters was in possession of the land. The possession was actually in Scharf, and his grantor, Brown. This being true, the Walters deed was void as to the persons in possession and holding adversely, under the decision of this court in Galbraith v. Payne, 12 N. D. 164, 96 N. W. 258. So far as the persons in possession of the land are concerned, the deed conveyed nothing, and, as against these parties, the title was still in Blass. After the delivery of the deed to Brown the title passed to him, as the possession of Scharf was not adverse to him. Scharf's possession was Brown's possesion. Such possession was held solely by virtue of the contract for the purchase of the land between Brown and Scharf. That contract was still in force, and there is no contention that payments had been fully made thereon, or that the terms of same had been fully complied with.

The appellant cites but one case in attempting to sustain the doctrine contended for by him that the Brown deed was a nullity by reason of the former deed to Walters. The case relied on is Dever v. Hagerty, 43 App. Div. 354, 60 N. Y. S. 181. This case was expressly overruled on the appeal to the Court of Appeals in 169 N. Y. 481, 62 N. E. 586. The reasons given for a reversal, in the opinion of the Court of Appeals, are conclusive, in our judgment, of fallacy in appellant's contention in this case. The fact that the Walters deed was void as to the persons in possession, and that the Blass deed to Brown conveyed the title to Brown, would determine this appeal in plaintiff's favor, were it not for the fact that Scharf is, and has been, in possession of the land under the contract for the sale thereof by Brown to him. Blass conveyed to Walters, Walter to Deutz, and Deutz to Scharf. The latter deed was given for an actual consideration of $500. The deed from Blass to Walters being void for the reason stated, the other deeds conveyed nothing, as they were based upon the void deed of Blass to Walters. Whether the deed from Blass to Brown was valid is a disputed point in this case, upon another ground, which is that Scharf was the only person actually in possession of the land, and, that in consequence thereof, the deed to Brown was void by reason of the provisions of said section 8733. Brown's possession, it is claimed, was not actual, but constructive only. This is appellant's contention, although the evidence shows, beyond dispute, that Brown placed Scharf in possession of the land under the contract. Scharf admits this in his testimony, and there is no countershowing. It is not attempted to be proven that Scharf had fully complied with the contract. He had never relinquished the possession that he secured solely by virtue of the contract. He had not repudiated the contract in any way when the Blass deed was given to Walters. He does not claim that he was originally in possession by virtue of any other claim to the land, nor under any other deed or conveyance of title. It remains, therefore, to be decided who was in possession of the land as between Brown and Scharf as against the Blass deed. It is undisputed that Scharf was in actual, physical possession of the land, and it cannot be denied that Scharf's possession was under Brown and could not be maintained at that time except under Brown's contract. There are authorities which lay down a principle of law that, before a deed is void by reason of champerty or maintenance, the adverse possession must be actual

(5 Am. & Eng. Enc. Law, 839) ; but it is not a fair construction of these authorities to say that they mean anything more than that the possession must be actual as against a merely constructive possession. As between Scharf and Brown, this court has decided whose possession it was, and that it was, as a matter of law, the possession of Brown, under facts the same as in this case. Schneller v. Plankinton et al., 12 N. D. 561, 98 N. W. 77. In that case the court said: "Counsel for respondent seek to sustain the validity of the deed by contending 'that the prohibition of sections 7001 and 7002, Rev. Codes 1899, which perpetuate the common-law doctrine, cannot be invoked against the plaintiff's deed because (a) the defendant, Plankinton, is not an adverse possessor; and (b) that, even though he were such, he cannot raise this question for the first time in the Supreme Court.' Neither of these contentions can be sustained. It is true, Plankinton was not personally in possession, but he had color of title, and the possession of Holstrom and Peterson, under their contracts, in law, was his possession. (Citing cases.) The purchaser of real estate entering into possession under executory contract holds under his vendor; and, under statutes relating to adverse possession, it is universally held that the possession of the purchaser is, in legal effect, the possession of his vendor." This decision, it seems to us, settles this controversy so far as the possession of the land at the time the Walters deed was given is concerned. The possession was beyond question that of Brown. We do not think it is necessary to cite further cases on this point, but there are many. See, also, Coates v. Cleaves et al., 92 Cal. 427, 28 Pac. 580; Harral v. Leverty et al., 50 Conn. 46, 47 Am. Rep. 608; Curran v. Banks, 123 Mich. 594, 82 N. W. 247; Greeno v. Munson et al., 9 Vt. 37, 31 Am. Dec. 605.

In the Matter of Department of Parks, 73 N. Y. 560, the court said: "But Dally entered into possession under Harris. Whatever he possessed was clearly under his parol agreement of purchase. He did not claim the land in hostility to Harris, but all he claimed, and all he could claim, was such right as his agreement gave him. It is too well settled to be disputed that one who enters upon land under a mere agreement to purchase does not hold the land adversely as against the vendor until his agreement has been fully performed, so that he has become entitled to a conveyance." Authorities holding that the possession of the vendee is under the vendor in such contracts, and what constitutes adverse possession un-

der champerty statutes, are collected in volume 4, American Digest, Decennial Edition, under the title "Champerty and Maintenance."

Another contention is that Brown was unable to give a good title to this land and could not, therefore, comply with the terms of the contract, and that this amounted to a constructive eviction of Scharf from the premises, and, having been thus constructively evicted, he had a right to buy the outstanding title to said land from Deutz; in other words, it is contended that, in the suit which was pending between Deutz as plaintiff, and Brown, Scharf, and others, as defendants, Deutz must inevitably have judgment for the ownership and possession of the land, and that Brown and Scharf would be ousted from the possession of this land under the Deutz deed. This does not at all follow. The Deutz deed was procured through Walters, and the deed from Blass to Walters was void on account of adverse possession of Brown and Scharf. It follows from this that there was no title in Deutz, inasmuch as the title to this land had previously been conveyed to Brown by a valid deed from Blass, and the Deutz deed was therefore a nullity. If the Deutz suit had proceeded to judgment in the place of having been dismissed, there is no room for the statement that Deutz would have prevailed in the litigation. Furthermore, it is undisputed that Brown, in order to avoid the possibility of a decision that the Blass deed was void as to him, had procured a deed directly from Blass to Scharf, which would have been turned over to Scharf if he had not taken a deed from Deutz. By repudiating the contract with Brown and taking a void conveyance from Deutz, he acted at his own risk, and is not entitled to any equitable consideration by reason of the fact that he secured no rights to this land from Deutz. As already shown, the contention that Brown could not give a good title fails, inasmuch as the Blass deed made Brown's title good in view of his legal possession of the land.

There being no constructive eviction, and Scharf's possession not being adverse to Brown, but being legally Brown's possession, defendant, being in possession under his contract only, could not buy or take Walters' title as long as the contract with Brown was in force, and the Walters deed would have been unavailing to Scharf, but would have inured to Brown's benefit if it had been a valid deed. Some cases seem to distinguish between adverse possession rendering conveyance by those out of possession champertous and adverse possession for a period sufficient to give title by

prescription (Barrett v. Coburn, 3 Metc. [Ky.] 510; Moore v. Baker, 92 Ky. 518, 18 S. W. 363); but, conceding that there is a distinction as to what is sufficient possession, it has no materiality in this case. There is no escape from the conclusion that Scharf's possession was under the Brown contract only, and title by adverse possession could not ever be claimed by Scharf until that contract was repudiated and surrendered, or until circumstances arose entitling Scharf to buy an outstanding title under some one of the exceptions to the general rule stated. The possession of the vendee under such contracts is analogous to the possession of a lessee under leases of real property. Although such vendees are not strictly tenants, it is generally held that there is a similarity in the relation so far as possession is concerned. The lessee is permitted only in certain excepted cases to deny his landlord's title while he is in possession under his lease. See volume 4, American Digest, supra.

The defendant earnestly contends for a disaffirmance and reversal of Galbraith v. Payne, supra. That decision is criticized as recognizing a rule, that has become obsolete and not now within the reason of the rule as existing when adopted. If we could concede all that is contended for by the appellant, our duty would be clear to uphold the Galbraith decision. Not only do we deem the rule binding under existing conditions, but it is well sustained by the opinion in the case. That decision has done much towards permanently quieting titles of those in possession under technically defective titles as against conveyances of a technically legal title by those out of possession. That case has been repeatedly cited in subsequent cases in this court, and has become a rule of procedure in respect to the property rights that should not be changed without some reason other than that a different rule is preferred. Unless shown to be wrong, stability in decisions should be adhered to, or chaos must inevitably follow in decisions of courts, in view of changes always certain to come in the membership of courts. However, if we were to concede all that is said against that decision, the appeal for another rule should be made to the legislature and not to the courts. Three sessions of the legislature have passed since that decision, without even an attempt to change the rule as to the effect of selling pretended titles as against those in possession. We are satisfied with the decision in that case, and do not deem it necessary to say anything further in its favor.

It follows that the plaintiff is the owner of the land in question, and entitled to its possession as against Scharf.

The judgment is affirmed.

ELLSWORTH and SPALDING, JJ., concur.

FISK, J. (dissenting). I am firm in the conviction that the majority opinion is unsound for several reasons and wholly without support in, and contrary to, the authorities. I shall endeavor, as briefly as possible, to prove the correctness of my assertion.

Conceding the correctness of all that is said in the opinion with reference to the case of Galbraith v. Payne, and the rule there announced it is entirely clear to my mind that the majority opinion wholly misapplies such rule. I assert, without fear of successful contradiction, that no court ever before invoked such rule in behalf of a plaintiff to enable him to make out his case as to proof of title for the purpose of quieting such title. That is exactly what is done in the majority opinion as I read it. The plaintiff has come into a court of equity alleging title and asking that same be quieted in him. He proves such title only by invoking the rule against champerty, and nevertheless, strange as it may seem, is permitted to recover. Without the aid of such rule he must fail. He cannot recover on the weakness of his adversary's title, but solely on the strength of his own title. If, for any reason, the rule of the Galbraith case cannot be applied in his favor, plaintiff's case must fail, for it is undisputed that Blass' deed to Walters was both delivered and recorded prior to the deed to Brown. There are at least two reasons why the rule of the Galbraith case, conceding, for the purpose of argument, that such rule has not been abrogated in this state, cannot be invoked in plaintiff's favor. First, such rule can never be invoked by a plaintiff; and, second, if it could, still plaintiff is not in a position to invoke it as he was not, at the time the deed from Blass to Walters was delivered, in the actual adverse possession of the land within such rule. After an exhaustive research I can find no authority permitting a plaintiff to invoke such rule. On the contrary the universal holding of the courts, as far as I have been enabled to discover, is to the effect that such rule may be invoked only by a defendant, and by him solely for the purpose of protecting his actual adverse possession. Scharf is the only person who could have invoked such rule. Smith v. Paxton, 4 Dana (Ky.) 391; Kenede v. Gardner, 4 Hill (N. Y.) 469. "The person in possession of land cannot

sustain a bill in equity for the avoidance of a deed executed to another by a person claiming adversely to the tenant, on the ground that the deed is void in consequence of his adverse possession." 6 Cyc. 890.

The case of Smith v. Paxton, 4 Dana (Ky.) 391, is a pioneer case in this country on this point, and its soundness has never been questioned. I quote: "The whole statute contemplates a protection to the occupant, as a defendant, in a controversy with a plaintiff who is seeking, as such, to disturb his possession. * * * While the legislature was vigilant in prescribing the form, and providing the modes by which the defendant, as such—the possessor—might avail himself of the defense afforded by the statute in bar of the suit or action of the adversary claimant, no provision whatever is made to enable him to avail himself of its provisions, in the prosecution of a suit. And none of the guards provided by the statute are made to apply to a plaintiff. And while the fourth section inhibits any right of action or suit in behalf of either of the contracting parties, who have violated the provisions of the second section, no restriction is imposed upon him as defendant, and no penalty denounced against his rights of defense. * * * It clearly points to the protection of the occupant only. And the provisions in the foregoing as well as the following sections of the statute were intended to throw around him such guards as would enable him successfully to defend his occupancy from outstanding adversary claims. We are therefore clearly of opinion that the forfeiture in the second section was intended as a shield to the possession, and not as a sword; as a weapon of defense, and not of offense; as a protection against the remedy sought by a plaintiff, and not as an instrument wherewith to assail the possession of others." In the majority opinion the plaintiff is permitted to invoke such rule affirmatively—not defensively—in order to establish his title, and for the sole purpose of obtaining the affirmative equitable relief of quieting such title. Not only this, but what is still more erroneous, he is permitted to do this as against the actual occupant of the land. With due deference to the majority of the court, I most emphatically protest against such a misapplication of the rule. In the Galbraith Case, and the subsequent cases in this court adhering to the rule there announced, such rule was correctly applied in so far as the proposition here under consideration is concerned.

But plaintiff cannot invoke such rule for the further reason that his grantor, Brown, was not in the actual possession of the real property at the date of the Blass deed to Walters. Defendant, Scharf, was the actual occupant under the contract of purchase, having been put into such actual possession by Brown under the contract, which possession defendant has ever since retained. I do not understand it to be defendant's contention, as stated in the majority opinion, that the deed from Blass to Brown is void under the provisions of section 8733, Rev. Codes 1905, because of defendant's actual possession at the date such deed was delivered; but his contention is that such deed conveyed nothing to Brown for the reason that Blass had previously conveyed the land to Walters. It is plaintiff who invokes the rule of the statute to defeat defendant's title. Defendant does not invoke such rule to defeat plaintiff's title, or at all. The majority opinion apparently concedes the rule to be that a person cannot urge the champerty or maintenance statute to destroy a deed by a third person out of possession unless the person thus urging such statute is himself in the actual possession of the land. It then proceeds to hold that at the date of the Walters deed Brown, through his vendee, Scharf, was in such actual possession, and in support thereof the following cases are relied on: Schneller v. Plankinton, 12 N. D. 561, 98 N. W. 77; Coates v. Cleaves, 92 Cal. 427, 28 Pac. 580; Harral v. Leverty, 50 Conn. 46, 47 Am. Rep. 608; Curran v. Banks, 123 Mich. 594, 82 N. W. 247; Greeno v. Munson, 9 Vt. 36; and in the Matter of Department of Parks, 73 N. Y. 560. I have examined each of these authorities and, with the exception of Schneller v. Plankinton, they are not in point. They simply go to the general proposition, which is conceded, that a person in possession under a contract of purchase does not hold adversely to his vendor, and is estopped to deny his vendor's title. The authorities may be said to be unanimous in their holding upon these questions. But this court in the case of Schneller v. Plankinton held that a person who has placed another in actual possession under a contract of purchase is still in the actual possession within the rule as to champerty and maintenance, and may urge such rule as a defense against the plaintiff's title obtained through a deed executed by a person out of possession. I maintain that such decision stands alone in the jurisprudence of this country and should be overruled as unsound. Numerous authorities are cited in such opinion, none of which

support the opinion. They are all cases supporting the general doctrine that the possession of the vendee under a contract of purchase will be considered the possession of the vendor within the limitation statute relating to the acquirement of title through lapse of time by one in adverse possession. No doubt Brown was in the adverse possession within the meaning of such rule, but it by no means follows that he was in the actual possession within the meaning of the champerty and maintenance statute. .

Aside from the foregoing opinion of this court the authorities are all to the contrary, as far as I can discover. I here cite a few of them: Heard v. Phillips, 101 Ga. 691, 31 S. E. 216, 44 L. R. A. 369; Slatton v. Tenn. C. I., etc., Co., 109 Tenn. 415, 75 S. W. 926; Boone v. Chiles 10 Pet. 177, 9 L. Ed. 388; 1 Warvelle on Vendors, pp. 201-202. In Boone v. Chiles, supra, the Supreme Court of the United States, in speaking of the legal relations between a vendor and a vendee under a contract for a deed, said: "Equity makes the vendor without deed a trustee to the vendee for the conveyance of the title. The vendee is a trustee for the payment of the purchase money, and the performance of the terms of the purchase. But a vendee is in no sense the trustee of the vendor as to the possession of the property sold. The vendee claims and holds it in his own right, for his own benefit, subject to no right of the vendor, save the terms which the contract imposes. His possession is therefore, adverse as to the property, but friendly as to the performance of the conditions of purchase. In virtue of his legal title, the vendor has a legal right of possession, but equity will not permit him to assert it unless the vendee has violated the contract. He will be enjoined if the vendee performs it." In Heard v. Phillips, supra, the Georgia court said: "It has several times been ruled by this court that the possession of one holding under a bond for titles to land is not adverse to the obligor of the bond, or the representatives upon his estate, in the sense that such possession may be the foundation of a prescription as against such obligor of his estate. Hines v. Rutherford, 67 Ga. 606; Allen v. Napier, 75 Ga. 275; Hawkins v. Dearing, 93 Ga. 108 (19 S. E. 717). Indeed, a vendee under a bond or contract for conveyance, though placed in possession by the vendor, does not hold adversely to the latter. By the very fact of taking under a bond or contract for a deed to be thereafter executed by the vendor, a purchaser recognizes the title of the vendor, and acknowledges himself

as holding in subordination, and not in antagonism, to it. It must be understood, however, that the obligor or his personal representative is not at liberty to treat the obligee as holding in subordination to the title of the obligor for all purposes. The doctrine is well settled, and has been announced in strong terms by the federal courts, that while the vendor without deed is a trustee of the vendee for the conveyance of the title, and the vendee in turn a trustee for the payment of the purchase money, yet that the vendee is in no sense a trustee of the vendor as to the possession of the property sold; that the vendee claims and holds it in his own right, for his own benefit, subject to no right of the vendor save the terms which the contract imposes; and that his possession is therefore adverse as to the property, but friendly as to the performance of the conditions of the purchase. We are clearly of the opinion, therefore, that while the obligee in the bond from Swift and La Mar had, as to the latter, no such adverse possession of the premises as would enable him to acquire a prescriptive title thereunder, yet such possession was, within the meaning of our statute, adverse in the sense that a sale of any portion of the property by the administrator upon the estate of one of the obligors, pending such possession, and without first having recovered the possession as required by the statute, was void." The latter case is a direct authority to the effect that Scharf, within the champerty statute, was in the actual adverse possession of this land. I do not wish to be understood as holding that Scharf's actual adverse possession would operate to defeat a transfer by his vendor to a third party or vice versa; but my position is that Brown, not being in the actual adverse possesion, cannot, as against Scharf, urge the champerty statute to defeat the title acquired by him through the Walters deed. He might, if he saw fit, treat such deed as inuring to his benefit, but this he does not seek to do. Having placed Scharf in the actual possession under the contract, Brown became, in effect, merely an equitable mortgagee. Whatever title he may have had he held as trustee for Scharf. The latter was given the actual possession, and was entitled to receive from Brown the full legal title u on compliance with the contract. When it became known that such title was outstanding in and being asserted by a third person, is it possible that Scharf was powerless to protect himself by purchasing the same? Clearly not. Such a rule would be abhorrent to all principles of equity, and

might possibly result in Scharf's eviction from and total loss of the land as well as all payments made under the contract. Brown having refused to procure such title, must Scharf sit back and rely wholly upon Brown's ability to respond to him in damages for a breach of the contract? This is the inevitable logic of the majority opinion, yet the books are full of cases upholding Scharf's right to purchase such outstanding title. It is an entirely different proposition to say that he may assert such title in hostility to the rights of his vendor in a possessory action by the latter to recover the land. This I do not contend he can do. The case of Dever v. Hagerty, 169 N. Y. 481, 62 N. E. 586, cited in the majority opinion, is not in point, as, concededly, Hagerty, who stands in the place of Brown in the case at bar, was the actual occupant of the land at the date of the delivery of the deeds.

It is in effect asserted in the majority opinion that by entering into the contract of purchase from Brown, and by going into possession under such contract, defendant is estopped to question plaintiff's title. I do not think the doctrine of estoppel can be extended to such length; if it can, the plaintiff, by mere force of an estoppel, would acquire a fee interest in the property, something which he did not theretofore possess. There is no legal reason why defendant's good faith conduct in entering into the contract upon the assumption that Brown had the title and right to sell should operate to confer upon Brown an advantage not theretofore possessed by him. It is no doubt true that plaintiff's rights as a mortgagee should remain intact. Blass held subject to such rights, and defendant, through the Deutz deed, merely succeeded to Blass'' title. The authorities cited by respondent's counsel in support of their contention that defendant will not be permitted to purchase an outstanding title and assert the same in hostility to the title of his vendor are, with a few exceptions, ejectment cases, and hence not in point. Of course, in such an action the defendant, who has gone into possession under plaintiff's title and in recognition thereof, is estopped to deny such title in an action involving merely the right to possession. In such an action the vendee is estopped under the same principles that a tenant is estopped to deny his landlord's title. If plaintiff had sued for the possession merely, his right to recover would have been clear, but instead of doing so he brought an action to determine adverse claims in which he asks that his alleged title be quieted, and that defendant be

adjudged to have no right, title, or interest in the premises. The correct rule regarding the doctrine of estoppel under the facts here involved may be found in the following authorities: 1 Warvelle on Vendors (2d Ed.) section 186; Smith v. Babcock, 36 N. Y. 167, 93 Am. Dec. 498; 29 Am. & Eng. Enc. Law (2d Ed.) 706; Bertram v. Cook, 44 Mich. 396, 6 N. W. 868; Jochen v. Tibbels, 50 Mich. 33, 14 N. W. 690; Shaw v. Hill, 83 Mich. 322, 47 N. W. 247 21 Am. St. Rep. 607; Young v. Severy, 5 Okl. 630, 49 Pac. 1024; Franklin v. Merida, 35 Cal. 558, 95 Am. Dec. 129; McKie v. Anderson, 78 Tex. 207, 14 S. W. 576. In the latter case it was held that the rule that a tenant cannot deny his landlord's title is limited to suits for possession only, and does not apply in an action of trespass to try title and for partition, in which the title itself is put in issue. In Bertram v. Cook, supra, it was held, Cooley, J., writing the opinion, that a ruling that the estoppel against defendant was equivalent to an admission of title in fee in plaintiff was erroneous; and in the later case of Jochen v. Tibbels the same court, among other things, said: "We have no doubt but that, in the first case tried upon appeal in the circuit, that the ruling of the court in excluding the deeds was correct. The action was to recover possession of the premises, and in such an action the tenant could not, nor could those claiming under him, deny the landlord's possessory right to the premises. * * * In the ejectment case the same rule would apply to the same extent. In that case, however, the plaintiff went further. She claimed and recovered a judgment giving her the premises in fee. Where the landlord seeks to recover the possession he can do so under the lease; but if he goes further, and claims the premises in fee, the tenant is not estopped from denying any right claimed by the plaintiff further or greater than that of possession. This fully protects the landlord, who regains his possession, and, the tenant having gained no advantage by taking a lease, the parties then are in proper position to litigate the title should they desire to do so. If the plaintiff's position is correct, a judgment in fee may be obtained by estoppel against the tenant, and thus the landlord has acquired an advantage which he would not be entitled to."

If plaintiff had sued merely for possession, defendant would have been estopped to deny his title, but he goes much further, and asks that defendant be required to set forth all his adverse claims to the property, "and that the validity, superiority and priority thereof

be determined; that the same be adjudged null and void, and that he be decreed to have no estate or interest in, or lien or incumbrance upon, said property; that his title be quieted as to such claim, and that defendant be forever debarred and enjoined from further asserting the same." It would, indeed, be a strange rule that would estop defendant in such an action from asserting a perfectly good title in himself as a defense. In such an action plaintiff must recover, if at all, upon the strength of his own title, and it is always a good defense in such an action to show that plaintiff has no title. Thus far I have assumed that the champerty statute has not been abrogated in this state as was held in the Galbraith case. Notwithstanding what is said in the majority opinion regarding our duty to uphold such decision, I am firmly convinced that such decision is radically erroneous, and the retention of the rule there announced will serve no useful purpose. The reason for the rule does not exist, and its retention and enforcement is the height of absurdity, as it accomplishes nothing except to perpetuate a mere technicality and legal monstrosity. Why should the rule exist when the reason for the rule has no existence?

In the opinion in the Galbraith case, among other things, it is said: "An examination of the authorities will show that, while a deed of a disseisee conveys no title which can be enforced in the name of the grantee against the disseisor or his privies, they go no further. It is now held that such deed is good against the grantor, and that it entitles the grantee to an action to recover the land, in the name of the grantor, but to his own use, even against the disseisor. * * * By executing and delivering the deed the grantor impliedly authorizes the grantee to use his name in an action to recover the land, and for that purpose the grantor is a real party in interest, within the meaning of the statute requiring every action to be prosecuted in the name of the real party in interest. * * * It is true the common-law doctrine and statutes declaratory thereof seem to be in increasing disfavor in a number of states, on account of the embarrassing restrictions placed upon the right of free alienation."

If the common-law doctrine is still in force here, the above statement of the law is, no doubt, strictly correct, although its effect is to recognize what must to every legal mind be deemed extremely technical rules. To say that a grantor's deed, whose property is adversely held, is perfectly valid as between him and his grantee and

all other persons, except the adverse possessor, and yet the grantor is the real party in interest in an action to recover the land, and, what is still more grotesque, that the grantor, at the same time, is merely a nominal party plaintiff as he has no real interest in the controversy and his grantee has the implied right to use his name as plaintiff and to prosecute the suit to his (the grantee's) own use, constitutes, to my mind, an exceedingly strange and anomalous condition of our law, and ought not to be continued in force unless the legislative will clearly demands it. If the grantee who has, by the conveyance, acquired the title as against all the world, except the adverse possessor, may, in the name of the grantor, recover everything which he might recover in his own name if the property was not adversely held, why should he not be permitted to recover in his own name? What good purpose is subserved by such a rule? The adverse possessor is neither benefited nor the grantee injured because of the rule requiring the latter to proceed in the name of a nominal plaintiff rather than in his own name. Public policy does not demand its retention, as absolutely nothing is gained thereby.

But it is said in the Galbraith case that this common-law doctrine was not abrogated by the Revised Codes adopted in 1895, and that the rule is still in force in this state. The opinion speaks of the "omission" from the Codes of 1895 of sections 3303, 4870, Comp. Laws of the territory (being section 681, Civ. Code, and section 74, Code Civ. Proc. 1877), and then proceeds to hold that said sections were merely declaratory of the common law, and hence their "omission" from the Codes "did not affect the law as it theretofore existed." These sections were not only omitted in the 1895 Codes but were expressly repealed thereby (see page 1517, Rev. Codes 1895), and if we are to credit the legislative assembly with any purpose whatever in repealing said sections, we must credit it with an intent, at least, to change the rule of the common law which, up to that time, had been perpetuated in force here by virtue of said sections, and which was so palpably unreasonable and useless, As argued by appellant's counsel, "it is absurd to say that the legislature was engaged in the repeal of these statutes for the purpose of perpetuating the same rule of law which they enunciated. It would convict the legislative body of imbecility to say that they were repealing statutes simply that the same law might be perpetuated." The express repeal of a law indicates an

intent to abrogate the rule thereby established or recognized. The statutes thus expressly repealed in 1895 were as follows:

Section 3303 (section 681, Civ. Code 1877): "Every grant of real property,  *  *  *  is void, if at the time of the delivery thereof, such real property is in the actual possession of a person claiming under a title adverse to that of the grantor."

Section 4870 (section 74, Civ. Proc. 1877): "Every action must be prosecuted in the name of the real party in interest.  *  *  * But an action may be maintained by a grantee of land in the name of a grantor, when the grant or grants are void by reason of the actual possession of a person claiming under a title adverse to that of the grantor at the time of the delivery of the grant, and the plaintiff shall be allowed to prove the facts to bring the case within this provision."

How could the legislative purpose to abrogate such rule be made more manifest than by the express repeal of such sections, where nothing of a similar nature was enacted to take their place? With due deference to the ability of the distinguished members of the court as constituted at the time Galbraith v. Payne was decided, I disagree with the views therein announced. Such decision does not constitute a rule of property, as it merely relates to remedial rights. It relates simply to a rule of practice as to the person in whose name the action to recover the land or to quiet title shall be prosecuted. As before stated the decision recognizes the fact that the deed is valid as between the grantor and grantee and operates to convey title, but that an action against the adverse holder must be brought and prosecuted in the grantor's name, and that the successful assertion of title by the grantee in the grantor's name at once inures to the benefit of the grantee. As directly in point, holding that it relates merely to the remedy, see Campbell v. Eq. Loan & Trust Co., 17 S. D. 31, 94 N. W. 401, and cases cited.

We, then, have this situation: The legislature in 1895 (Rev. Codes 1895, page 1517, sections 2, 3) expressly repealed and abrogated section 681, Civ. Code, and section 74, Code Civ. Proc. 1877; but continued without change section 189 of the Penal Code as section 7002, Rev. Codes 1895. By section 7738 of the Revised Codes of 1895 it is provided: "The provisions of this Code so far as they are the same as existing statutes, must be construed as continuations thereof, and not as new enactments." The

question therefore, arises, Did the mere continuation of the penal section have the effect of nullifying the express abrogation of the other sections? If so, or if the reasoning in the Galbraith opinion be sound, to the effect that by the omission of said sections from the Code of 1895, the common-law rule became in force, the legislative act expressly abrogating these sections accomplished naught. I am unable to agree to such a conclusion. By the enactment of said sections the common-law rule upon the subject therein covered was in effect thereby continued, and by repealing such sections, which were merely declaratory of the rule of the common law, the legislative intent to abrogate such rule is too clear for discussion, and such intent should be given effect. It is no doubt the general rule that the common law is restored when a statute changing it is repealed. Mathewson v. Phoenix Iron Foundry (C. C.) 20 Fed. 281; State v. Rollins, 8 N. H. 550; Ins. Co. v. Barley, 16 Grat. (Pa.) 363; but, as holding contra, see State v. Slaughter, 70 Mo. 484. But when a statute merely affirms the rule of the common law, its repeal abolishes the rule of the common law. Sedgwick v. Stanton, 14 N. Y. 289. See, also, Robins v. McClure, 100 N. Y. 328, 3 N. E. 663, 53 Am. Rep. 184. The opinion of Selden J., in Sedgwick v. Stanton is very interesting, reviewing, as it does, the history of the doctrine of maintenance at common law, and upon the question here involved I quote from the opinion as follows: "The Code, by abrogating this technical rule of the common law, has manifested the same hostility to the principles of champerty and maintenance which has been before so often exhibited. Notwithstanding the truth of what is urged by Chancellor Walworth, in Small v. Mott, 22 Wend. (N. Y.) 403, that these, being offenses at common law, were not necessarily abrogated by the repeal of the statute (1 R. L. 172), which was, in the main, simply declaratory, I still think, in view of the manifest tendency of modern judicial opinion, as well as of the plain scope and intent of our legislation on the subject, that not a vestige of the law of maintenance, including that of champerty, now remains in this state, except what is contained in the Revised Statutes."

Construing section 8733, Rev. Codes 1905, in the light of the express repeal of the other sections and the evident intent of the legislature in thus abrogating the old rule, making such conveyances void and requiring the grantee to sue in the grantor's name,

I am convinced that the only result of a violation of such penal section is to subject the offender to a conviction for a misdemeanor, the deed being perfectly valid as to all persons, including the adverse possessor, and that the grantee may, in fact must, assert his rights thereunder in his own name as the real party in interest. Only by adopting this construction are we enabled to give effect to the clear intent of the legislature.

In my opinion the situation of the parties and their respective rights are as follows: Plaintiff is merely a mortgagee and, as such, is entitled to the possession which defendant obtained from Brown under the contract. Defendant took from Deutz subject to such mortgage, and is not entitled to any affirmative equitable relief without offering to do equity. Tracy v. Wheeler, 15 N. D. 248, 107 N. W. 68, 6 L. R. A. (N. S.) 516. He makes no such offer but relies wholly upon his rights under the deed. What are his rights thereunder? Blass held the legal title, but the same was held subject to such mortgage indebtedness. Having surrendered the possession to the mortgagee, Blass' legal title merely conferred upon him and his grantee a right of redemption. Defendant agreed to purchase, and Brown agreed to sell, the land for the consideration of $1,600. Plaintiff purchased from Brown subject to such contract, and therefore, if such contract had not been forfeited, plaintiff, as such mortgagee, would be entitled to receive from defendant only this sum with interest, less the payments made. It is clear, however, that such contract has been terminated by a valid forfeiture, hence defendant is entitled to no affirmative relief in this action. His remedy is an action to redeem from the Howard mortgage by paying the plaintiff the amount justly due him thereon. Appellant's counsel do not contend that such contract is still in force. In fact, their entire printed brief and argument is directed to the proposition that appellant had a right to and did, in fact, acquire the title to the land in dispute, and that Brown had no title thereto, but merely a mortgage lien thereon. The attitude of the appellant at all times since he received the deed from Deutz has been that of utter hostility to the contract. He concededly has at all times since then wholly ignored such contract and the right of Brown or plaintiff thereunder, having at no time shown a desire or willingness to make good his defaults. Plaintiff acted strictly within his rights in declaring the forfeiture and defendant has no just cause for complaint.

He was given a reasonable time in which to make good the defaults, and was notified that if he failed to do so the contract would be declared forfeited. This was sufficient.

My conclusion, therefore, is that plaintiff, having no title, cannot maintain this action to quiet title, and that although defendant has the title he holds the same subject to the Howard mortgage and to plaintiff's right as mortgagee to the possession of the land, and is not entitled to the equitable relief prayed for in his answer, or to any equitable relief in this action, having failed to tender or offer to do equity by satisfying such mortgage indebtedness. The judgment should accordingly be reversed and the action dismissed.

CARMODY, J. I concur in the views of Judge Fisk upon the first point, but choose to express no opinion upon the other questions involved. I think, however, that plaintiff should in this action, be restored to the possession as mortgagee, and the judgment appealed from modified in this respect.